**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

**NEWTERRA CORPORATION, INC.**
**and NEWTERRA, LTD**.                    **CASE NO:**

    Plaintiff,

v.                                                            **COMPLAINT AND JURY**
                                     **DEMAND**

**URBAN-GRO, INC.,**
    Defendant.

---

Plaintiffs NEWTERRA CORPORATION, INC. and NEWTERRA, LTD. ("Newterra") by their counsel, COZEN O'CONNOR, as for their Complaint against Defendant URBAN-GRO, INC. ("Urban Gro"), allege as follows:

**PARTIES**

1.     Plaintiff Newterra Corporation, Inc. is a corporation organized and existing under the laws of the State of Delaware and maintains its principal place of business at 1555 Coraopolis Heights Road, Suite 4100, Coraopolis, Pennsylvania 15108.

2.     Plaintiff Newterra, Ltd. is a corporation organized and existing under the laws of Canada and maintains its principal place of business at 1291 California Avenue, Brockville, Ontario, Canada, K6V5Y6.

3.     Upon information and belief, Defendant Urban Gro is a corporation organized and existing under the laws of the Delaware with its office and principal place of business at 1751 Panorama Point, Unit G, Lafayette, Colorado 80026.

4.     This lawsuit involves Newterra's claims for damages—including unpaid invoices, interest, and attorney's fees—relating to Newterra's work on construction projects pursuant to invoices and under a Supply Agreement between the parties.

**JURISDICTION AND VENUE**

5.    This Court has subject matter over this action pursuant to 28 U.S.C. § 1332(a)(1). This action satisfies the complete diversity of citizenship requirement.

6.    This action also satisfies the amount in controversy requirement of 28 U.S.C. § 1332(a).

7.    Venue is proper in the United Stated District Court for the Western District of Pennsylvania because a substantial part of the events giving rise to the claims occurred in this district. 28 U.S.C. § 1391(b)(2). Specifically, because Plaintiff Newterra Corporation, Inc. is based in Coraopolis, Pennsylvania, the subject transaction was entered in Coraopolis, Pennsylvania, and the harm suffered has occurred in the Western District of Pennsylvania.

**FACTUAL BACKGROUND**

8.    The allegations contained in Paragraphs 1 through 7 above are realleged and incorporated herein by reference.

9.    At all times relevant hereto, Newterra was performing work for Urban Gro at various projects including projects located at 1948 W Capps Hwy., Monticello, FL 32344 (the "Florida Project"); 1265 County Road 1A, Ironton, OH 45638 (the "Ohio Project"); and 1751 Panorama Pt., Unit G, Lafayette, CO 80026 (the "Colorado Project").

10.    Newterra designs, engineers, manufactures, and services environmental, water and wastewater treatment solutions, offering a broad portfolio of technologies.

11.    Newterra entered into a Supply Agreement with Urban Gro, dated April 24, 2023. The Supply Agreement is attached hereto as **Exhibit A.**

12.    Following the entry of the Supply Agreement, Newterra agreed to provide certain products and services to Urban Gro,  and Newterra issued invoices to Urban Gro for the work that it performed for Urban Gro.

13.     Newterra provided all materials and services owed to Urban Gro under the invoices, including, but not limited to, providing quality materials as requested by Urban Gro.

14.     Newterra submitted invoices to Urban Gro setting forth the amounts due for the services and materials Newterra provided to Urban Gro.

15.     Urban Gro accepted the services and materials that Newterra provided without objection.

16.     The invoices contain a Net 30 term, which requires that payment in full be made within thirty (30) days.

17.     Further, the Supply Agreement between the parties requires that payment be made in full within thirty (30) days.  *See* Supply Agreement, p. 13, Exhibit A: Product Catalogue.

18.     Although Newterra submitted invoices for the materials and services it provided to Urban Gro in accordance with the terms contained in the invoices, Urban Gro failed to make payment in the amount of $192,780.12. The at-issue invoices (the "Invoices") are collectively attached hereto as **Exhibit B.**

19.     There are seven specific invoices that remain wholly unpaid: (1) Newterra's March 14, 2025 Invoice No. PSINC-008014 for $50,280.00; (2) Newterra's May 28, 2025 Invoice No. PSINC-008765 for $126,800.00; (3) Newterra's June 17, 2025 Invoice No. PSINC-008989 for $9,780.75; (4) Newterra's July 16, 2025 Invoice No. PSINC-002173 for $1,250.00; (5) Newterra's December 16, 2024 Invoice No. PSLTD-004956 for $3,167.44; (6) Newterra's April 7, 2025 Invoice No. PSLTD-005625 for $1,023.97; and (7) Newterra's April 8, 2025 Invoice No. PSLTD-005635 for $457.96. *See* Ex. B.

3

20.    Urban Gro never voiced any objection to the amounts of Newterra's Invoices (which remain unpaid to this day), nor did it raise any concern about the quality of the products and/or the work performed by or on behalf of Newterra.

21.    On October 29, 2025, Newterra, through its counsel, sent a letter to Urban Gro identifying the overdue balance and seeking prompt payment. A copy of the letter is annexed hereto as **Exhibit C.**

22.    Newterra received no written response or any other response to this letter.

23.    As of the date of this filing, Urban Gro has failed to pay Newterra for its past due amounts and Invoices despite the clear material obligations of Urban Gro to make payment.

24.    Urban Gro has breached its contractual agreement with Newterra by failing to pay for the materials and services Newterra provided to Urban Gro.

25.    As a result of Urban Gro's failure to pay Newterra for services provided to it, there remains an outstanding receivable balance in the amount of $192,780.12.

26.    Newterra seeks damages against Urban Gro arising from Urban Gro's failure to remit payment, as well as all applicable interest, costs, and attorneys' fees, pursuant to Section 12.12 of the Supply Agreement.

<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>

**(Breach of Contract)**

27.    The allegations contained in Paragraphs 1 through 26 above are realleged and incorporated herein by reference.

28.    The Invoices issued by Newterra and accepted by Urban Gro constitute an agreement for Newterra to provide materials and services and for Urban Gro to make complete payments to Newterra for the same.

29.     Newterra performed all material obligations to Urban Gro in accordance with the Supply Agreement and the Invoices.

30.     The Work performed by and/or materials provided by Newterra in connection with the Invoices has been approved and accepted by Urban Gro.

31.     Pursuant to the terms of the Invoices, Urban Gro was obligated to pay sums to Newterra in the amount of $192,780.12.

32.     Despite Newterra's attempts to recoup what it is owed, Urban Gro materially breached the terms of the Invoices by failing to remit payment to Newterra for the services provided to it.

33.     To date, Urban Gro has failed to remit payment to Newterra for the past due services provided to it.

34.     Based on the foregoing and as a result of Urban Gro's material breach of the agreement and invoices with Newterra, Newterra has suffered and continues to suffer economic loss and damage in excess of $192,780.12.

35.     Newterra has made demand upon Urban Gro for payment of all sums due and owing, plus interest thereon.

36.     As a result of the above-described breaches of the Supply Agreement and Invoices by Urban Gro, Newterra is entitled to recover from Urban Gro, a principal sum in excess of $192,780.12, plus interest thereon at the highest rate allowed by law from the date of breach until paid, court costs and attorney's fees, the specific amount to be proven at any trial held in connection with this matter.

**SECOND CLAIM FOR RELIEF**

**(Account Stated)**

37.     The allegations contained in Paragraphs 1 through 36 above are realleged and incorporated herein by reference.

38.     Newterra issued the Invoices to Urban Gro for the services it provided to Urban Gro in accordance with the terms agreed to by the parties and the terms contained in the Invoices.

39.     The Invoices provide a detailed description of services and items provided, quantity, rate, and amount.

40.     Each Invoice stated the amount due along with the corresponding due date.

41.     Urban Gro never voiced any objection to the amount of Newterra's Invoices.

42.     The Invoices were received and retained by Urban Gro beyond a reasonable time without objection from Urban Gro.

43.     By retaining the Invoices beyond a reasonable time without objection, Urban Gro promised both expressly and implicitly to pay the balances stated therein.

44.     By retaining the Invoices beyond a reasonable time without objection, the balances stated therein were established as an account stated.

45.     Newterra has incurred, and continues to incur, attorneys' fees and expenses in an effort to collect its outstanding invoices from Urban Gro.

46.     Urban Gro has unreasonably refused to pay the amounts owed to Newterra, despite Newterra's attempts at resolving Urban Gro's payment failures.

47.     Due to Urban Gro's non-payment of the Invoices and aforementioned conduct, Newterra can recover against Urban Gro under an account stated theory of liability a principal sum in excess of $192,780.12, plus interest thereon at the highest rate allowed by law from the date of

6

breach until paid, court costs and attorney's fees, the specific amount to be proven at any trial held in connection with this matter.

## THIRD CLAIM FOR RELIEF

### (Quantum Meruit, in the alternative)

48.     The allegations contained in Paragraphs 1 through 47 above are realleged and incorporated herein by reference.

49.     Newterra provided materials and performed its services on Urban Gro's behalf, at its request.

50.     Urban Gro was fully aware of the activities undertaken by Newterra on its behalf.

51.     Urban Gro benefitted from the services provided by Newterra.

52.     Urban Gro repeatedly assured and represented to Newterra that any outstanding invoices would be paid.

53.     As a direct and proximate result of such failure, Newterra has suffered substantial damages in an amount not less than $192,780.12.

## FOURTH CLAIM FOR RELIEF

### (Violation of Colorado's Prompt Payment Act)

54.     The allegations contained in Paragraphs 1 through 53 above are realleged and incorporated herein by reference.

55.     Invoice No. PSINC-00008014 relates to a construction project in Colorado.

56.     Pursuant to C.R.S. 24-91-103(2), Urban Gro has violated Colorado's Prompt Payment act by failing to make timely payments for Invoice No. PSINC-00008014, totaling $50,280.00, to Newterra.

57. Due to Urban Gro's failure to remit timely payment, the outstanding balance owed to Newterra is subject to the 1.5% interest rate violation per month.

58. Therefore, in addition to the $50,280.00 owed outright, Urban Gro currently owes interest to Newterra under Colorado's Prompt Payment Act, and such penalties will continue to accrue.

## FIFTH CLAIM FOR RELIEF

### (Violation of Florida's Prompt Payment Act)

59. The allegations contained in Paragraphs 1 through 71 above are realleged and incorporated herein by reference.

60. Invoice Nos. PSINC-009299, PSINC-008765, and PSINC-008989 relate to a construction project in Florida.  These invoices total a collective $137,850.75, which includes $1,250,00 (Invoice No. PSINC-009299), $126,820.00 (Invoice No. PSINC-008765), and $9,780.75 (PSINC-008989).

61. Pursuant to Fla. Stat. § 55.03 and Fla. Stat. § 715.12, Urban Gro has violated Florida's Prompt Payment act by failing to make timely payments for Invoice Nos. PSINC-009299, PSINC-008765, and PSINC-008989, totaling $137,850.75, to Newterra.

62. Due to Urban Gro's failure to remit timely payment, the outstanding balance owed to Newterra is subject to 8.90 percent, 8.65 percent, or 8.44 percent per annum, plus an additional 12 percent per annum.

63. Therefore, in addition to the $137,850.75 owed outright, Urban Gro currently owes interest to Newterra under Florida's Prompt Payment Act, and such penalties will continue to accrue.

## SIXTH CLAIM FOR RELIEF

### (Violation of Ohio's Prompt Payment Act)

64.    The allegations contained in Paragraphs 1 through 62 above are realleged and incorporated herein by reference.

65.    Invoice Nos. PSLTD-004956, PSLTD-005625, and PSLTD-005635 relate to a construction project in Ohio.   These invoices total a collective $12,008.22, which includes $3,167.44 (Invoice No. PSLTD-004956), $4,191.41 (Invoice No. PSLTD-005625), and $4,649.37 (Invoice No. PSLTD-005635).

66.    Pursuant to Ohio Rev. Code § 4113.61 Urban Gro has violated Ohio's Prompt Payment act by failing to make timely payments for Invoice Nos. PSLTD-004956, PSLTD-005625, and PSLTD-005635, totaling $12,008.22, to Newterra.

67.    Due to Urban Gro's failure to remit timely payment, the outstanding balance owed to Newterra is subject to the 1.5% interest rate violation per month.

68.    Therefore, in addition to the $12,008.22 owed outright, Urban Gro currently owes interest to Newterra under Ohio's Prompt Payment Act, and such penalties will continue to accrue.

## PRAYER FOR RELIEF

**WHEREFORE**, Newterra prays this Court for a judgment as follows:

A.    On the First Cause of Action for breach of contract, a judgment against Urban Gro and in Newterra's favor for damages in an amount not less than $192,780.12 together with interest, costs, and attorneys' fees to be determined at trial

B.    On the Second Cause of Action for account stated, a judgment against Urban Gro and in Newterra's favor for damages in an amount not less than $192,780.12 together with interest, costs, and attorneys' fees to be determined at trial;

9

C.	On the Third Cause of Action for quantum meruit, in the alternative, judgment against Urban Gro and in Newterra's favor for damages in an amount not less than $192,780.12 together with interest, costs, and attorneys' fees to be determined at trial;

D.	On the Fourth Cause of Action for violation of Colorado's Prompt Payment Act, a judgment against Urban Gro and in Newterra's favor for interest under Colorado's Prompt Payment Act on Invoice No. PSINC-00008014;

E.	On the Fifth Cause of Action for violation of Florida's Prompt Payment Act, a judgment against Urban Gro and in Newterra's favor for interest under Florida's Prompt Payment Act on Invoice Nos. PSINC-009299, PSINC-008765, and PSINC-008989;

F.	On the Fourth Cause of Action for violation of Ohio's Prompt Payment Act, a judgment against Urban Gro and in Newterra's favor for interest under Ohio's Prompt Payment Act on Invoice Nos. PSLTD-004956, PSLTD-005625, and PSLTD-005635;

G.	Award Newterra pre-judgment and post-judgment interest on all damages allowed by law;

H.	Award Newterra costs, including reasonable attorneys' fees, incurred in this action, pursuant to the Supply Agreement; and

I.	Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Newterra hereby demands a jury trial on all issues so triable.

10

Dated: March 23, 2026

COZEN O'CONNOR

Richard D. Kalson  Pa. ID. No. 69611
Rachel B. Soloman (*pro hac vice* admission to be sought)
COZEN O'CONNOR
One Oxford Centre
301 Grant Street
41st Floor
Pittsburgh, PA 15219

3WTC, 175 Greenwich Street, 55th Floor
New York, New York 10007
Telephone: (212) 908-1378
Facsimile: (212) 509-9492

Email: rkalson@cozen.com
        rsoloman@cozen.com

*Counsel for Plaintiff*

11

# EXHIBIT A

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

## SUPPLY AGREEMENT

This Supply Agreement, including all Exhibits, (the "Agreement") is effective the later date of execution below (the "Effective Date"), and is made and entered into by and between: urban-gro, Inc., a Delaware corporation with its principal offices at 1751 Panorama Point, Unit G, Lafayette, CO 80026 ("urban-gro"); and Newterra Corporation, Inc., a Nevada corporation with its principal offices at 1555 Coraopolis Heights Road, Ste 4100, Coraopolis, PA 15108 ("Supplier").

## RECITALS

WHEREAS, Supplier designs, develops, and makes certain Products (as defined below) and desires to sell such Products to urban-gro; and

WHEREAS, urban-gro desires to purchase such Products from Supplier.

NOW, THEREFORE, In consideration of the mutual covenants and agreements and the mutual benefits expected to result from this Agreement, the parties, intending to be legally bound, agree as follows.

## 1.    DEFINITIONS

Capitalized terms used in this Agreement will have the meanings set forth in this Section 1, or as set forth elsewhere in this Agreement.

"Intellectual Property Rights" means all industrial and other intellectual property rights comprising or relating to: (a) patents; (b) Trademarks (as defined below); (c) internet domain names, whether or not Trademarks, registered by any authorized private registrar or governmental authority, web addresses, web pages, website, and URLs; (d) works of authorship, expressions, designs, and design registrations, whether or not copyrightable, including copyrights and copyrightable works, software, and firmware, APIs, architecture, files, records, schematics, data, data files, and databases and other specifications and documentation; (e) Trade Secrets (as defined below); (f) semiconductor chips, mask works, and the like; and (g) all industrial and other intellectual property rights, and all rights, interests, and protections that are associated with, equivalent or similar to, or required for the exercise of, any of the foregoing, however arising, in each case whether registered or unregistered and including all registrations and applications for, and renewals or extensions of, these rights or forms of protection under the laws of any jurisdiction throughout in any part of the world.

"Products" means the products set forth in Exhibit A.

"Software" means computer programs that may be included in the Products or provided with the Products.

"Term" means the period of time defined in Section 8.

"Trade Secrets" has the meaning defined in the Uniform Trade Secrets Act and includes all inventions, discoveries, trade secrets, business and technical information and know-how, databases, data collections, patent disclosures, and other confidential and proprietary information and all rights therein, from which a party derives economic value or advantage from its confidentiality.

"Trademarks" means all rights in and to US and foreign trademarks, service marks, trade dress, trade names, brand names, logos, trade dress, corporate names, and domain names and other similar designations of source, sponsorship, association, or origin, together with the goodwill symbolized by any of the foregoing, in each case whether registered or unregistered and including all registrations and

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

applications for, and renewals or extensions of, these rights and all similar or equivalent rights or forms of protection in any part of the world.

"urban-gro Marks" means the Trademarks by which urban-gro identifies its Products and its other goods and services, including without limitation "GRO-CARE", "OPTI-DURA", "URBAN-GRO", "SOLEIL", "SOLEIL 360", "SOLEIL CONTROLS', "SOLEIL TECHNOLOGIES", "SOLEIL TECHNOLOGY", "SOLEIL TECH" and "SOLEIL SENSE".

"Controlled Environment Agriculture" or "CEA" or "CEA-Related" is a technology-based approach toward crop production and includes any entity operating in the agriculture, vertical farming, greenhouse, horticulture, cannabis, or hemp space.

## 2.    **SCOPE OF RELATIONSHIP**

**2.1. Supply of Products.** Pursuant to the terms of this Agreement, Supplier will provide urban-gro with the Products at the costs and any applicable MSRP set forth in Exhibit A to the specifications of urban-gro. Any customizations or configurations for the Products will be set forth in the applicable Purchase Order (as defined below) or as otherwise agreed to in writing by the parties. urban-gro may sell and distribute Products to any parties at the prices urban-gro chooses. In consideration for the execution of this Supply Agreement, Supplier agrees to dedicate adequate production resources, facilities, and personnel to ensure all demand from urban-gro for the Products are met.

    **2.1.1. Product List.** At the time of execution of this contract, Supplier will provide urban-gro with a Product Catalogue including urban-gro cost, any suggested MSRP, any product-specific lead times, and any Supplier item codes.    Any new products offered by Supplier to urban-gro will include an updated Product Catalogue sent to urban-gro, or notification including mention of urban-gro cost, any suggested MSRP, any product-specific lead times, and any Supplier item codes.

    **2.1.2. Product Discontinuation.** If at any time Supplier discontinues a product that has been offered to urban-gro, Supplier will provide urban-gro at least thirty (30) days advanced notice of the timeline until discontinuation. If there are existing orders in queue or quotes out to urban-gro customers containing these discontinued items, Supplier will provide an adequate replacement at a cost the same or less-than the discontinued item.

**2.2. Grant Right to Resell.** Supplier hereby grants urban-gro the non-exclusive right to distribute, resell, market, and otherwise sell any and all products specified in Exhibit A, as well as any additional products added during the term of this agreement, to the CEA-related space, including the agriculture, cannabis, and horticulture markets in North America and Europe. urban-gro will use commercially reasonable efforts to market, advertise, sell, and offer to sell the Products to customers in the CEA and CEA-related industry.

    **2.2.1. Sales Registration.** urban-gro and Supplier shall agree upon a process of account sales registration for sales of products to the market within 15 days of execution of this contract. Supplier shall protect urban-gro's interests with these registered accounts, meaning Supplier shall prevent any other resellers, system integrators, retailers, etc., from receiving quotes for and selling products to any accounts that have been registered by urban-gro. If any channel conflict or indirect sale does occur to any urban-gro registered account, Supplier will be solely responsible for all missed revenue, and will send urban-gro payment aligned with what urban-gro's margin would have been under a direct sale at the time of product shipping as well as any additional costs.

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

**2.3. Development and Collaboration.** The parties agree to work in good faith on the research and development of any Products. Supplier will use its best efforts to design and develop Products that conform to requests from urban-gro. With respect to any design files provided by urban-gro to Supplier, urban-gro will provide such files in computer assisted drafting file format where necessary. urban-gro may be subject to confidentiality restrictions with its customers on any data or other information from the installation and use of the Products, and, as such, Supplier understands that urban-gro may not share and collaborate on certain Products for certain customers.

**2.4. Marketing.** urban-gro and Supplier shall identify a point of contact within each organization to align on any and all marketing needs. This will include ensuring accurate go to market materials, accurate specifications of products, accurate competitive analyses, proper messages to the market, and alignment on new product releases. All materials requested and required for marketing and sales purposes will be requested by urban-gro and supplied by Supplier prior to execution of any upcoming Purchase Orders.

**2.5. Training.** Along with any marketing materials as detailed in 2.4, Supplier shall offer training and any training materials necessary to urban-gro and or urban-gro customers for design, use, competitive positioning, and value proposition of any Products. These trainings can be in person or virtual.

**2.5. Prohibited Acts.** Notwithstanding anything to the contrary in this Agreement, neither party nor their personnel shall (a) engage in any unfair, competitive, misleading, or deceptive practices respecting the other party, the other party's Intellectual Property Rights, or its respective products and services, including any product or company disparagement or "bait-and-switch" practices; or (b) fail to use commercially reasonable efforts to fulfill their respective obligations as set forth herein.

**2.6. Ongoing Coordination.** Supplier and urban-gro will each identify two key contacts in addition to the marketing contact – one for sales and one for operation for ongoing coordination. A twice a month checkpoint will be set up for these parties to discuss and address any upcoming needs or operational issues and share sales pipeline data as a possible method of account registration and supply material planning.

**2.7. Additional Considerations.** Any additional aspects to help define scope of relationship and expectation will be detailed in Exhibit B.

## 3.    REPRESENTATIONS, WARRANTIES, GENERAL INDEMNITY

**3.1. Compliance with Laws.** The parties represent and warrant that: (a) they are duly organized, validly existing, and in good standing in their respective states of formation; (b) they are duly qualified to do business, and are in good standing in every jurisdiction in which such qualification is required (except where failure to be so qualified would not materially and adversely affect its ability to perform under this Agreement); (c) they have the full right, power, and authority to enter into this Agreement, to grant the rights and licenses hereunder, and to perform their respective obligations under this Agreement; (d) the execution of this Agreement by each party's representative (whose signature is set forth below) has been authorized by all necessary action of the party; (e) that their business operations related to its performance under this Agreement comply with: (i) all applicable federal laws, with the exception of any federal laws that may be interpreted to apply to commercial activities in connection with the cultivation of cannabis in the United States, and where such federal laws (or federal enforcement thereof) are inconsistent with the party's compliance with all state and local laws regarding the operation of a cannabis business; and (ii) state, and local laws and regulations, including and but not limited to the state and local cannabis licensing and program rules and local zoning ordinances, and that there are no legal restrictions or prohibitions which would adversely affect the parties' fundamental benefits under this Agreement. Further, the parties agree that this Agreement shall not be interpreted or construed as being void, voidable, or an illegal contract due to its subject matter relating to the cultivation of cannabis, and each party agrees to waive illegality as a defense as it may apply to commercial activities in connection with the cultivation of cannabis in the United

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

States. urban-gro will be responsible for obtaining, at its own expense, any and all federal, state, or local licenses, permits, or approvals that may be necessary to buy or sell the Products (or license, in the case of Software) within any applicable jurisdiction. In connection with the foregoing, Supplier will provide all commercially reasonable cooperation that may be necessary. Each party will furnish such documentation that the other party may reasonably request to confirm the party's compliance with this Section.

**3.1.1. Notice of Legal Conflict.** During the Term of this Agreement, each party will notify the other party immediately upon becoming aware of the existence and content of any new regulation, directive or law that conflicts with any provision of this Agreement, or would otherwise deprive the parties of the benefits of this Agreement.

**3.1.1. U.S. Export Controls.** The parties agree to work together in order to take actions and execute such documents which are necessary to be in compliance with, all U.S. federal laws and regulations applicable to the lawful export of Products and Software.

**3.2. Supplier Warranties.** Supplier represents and warrants for a period of [1] one year from the date of delivery that: (a) title to the Products will be free and clear at the time of delivery; (b) Products will be free from defects in material, workmanship, and design; (c) Products will materially conform to mutually agreed-upon specifications; (d) no Products, nor the manufacture, marketing, sale, and use of the Products, nor anything in or contemplated by this Agreement, infringes on any third-party rights, including Intellectual Property Rights (e) urban-gro will receive good and valid title to the Products, free and clear of all encumbrances and liens of any kind; (f) the Products are new and do not contain used or reconditioned parts, unless otherwise specified in Exhibit C; (g) all Products and all parts of Products, including, but not limited to parts that may be identified as replacement units or spare parts, will not experience data integrity, undetected data loss or related issues, and shall conform with any other related requirements specified in Exhibit C; (h) except as may otherwise be agreed upon or limited in this Agreement, urban-gro may pass through to customers all warranties granted by Supplier under this Agreement; (i) the Products fit the intended purpose; and (j) all Products comply with all applicable local, state, and federal laws, regulations, standards, and codes. A copy of a written warranty for all Products in Exhibit A will be furnished to urban-gro upon execution of this contract. Urban-gro will act as lead contact with the customer and triage any support or warranty issues before initiating and helping complete this warranty process with Supplier.

**3.2.1. Non-Conforming Products.** In the event of breach of any of the warranties in this section 3, Supplier will, at urban-gro's option and Supplier's expense, refund the purchase price for, or correct or replace the affected Products within 10 days after notice by urban-gro to Supplier of any such breach. All costs associated with any warranty repair or replacement, including without limitation, costs to inspect the Products, costs to transport the Products from urban-gro to Supplier and return shipment to urban-gro, and costs resulting from supply chain interruptions, are the responsibility of Supplier. If Products are adequately repaired and/or replaced the new warranty period will commence on the date of acceptance of the corrected Product by urban-gro, but in no case shall the total warranty exceed 24 months from initial delivery. If Supplier fails to repair or replace the Product within the time period required above, urban-gro may repair or replace the Product at Supplier's expense.

**3.2.2. Third-Party Warranty.** If Supplier provides urban-gro with Products that are subject to warranty or support terms from a third-party, such third-party's warranties will apply in addition to Supplier's, and, unless specifically agreed in writing by Supplier and urban-gro, Supplier will provide full warranty and support for them. Supplier shall take all necessary steps as required by such third-party manufacturers to effect proper assignment of such warranties to urban-gro or its customers. Supplier will give urban-gro a copy of third-party warranty terms before urban-gro orders any Products. Urban-gro will act as lead contact with the customer and triage any support or warranty issues before initiating and helping complete this warranty process with Supplier.

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

**3.3. Indemnity.** Each party (an "Indemnifying Party") will indemnify, defend, and hold harmless the other party, its subsidiaries and affiliates, as well as the party's and its subsidiaries' respective officers, directors, employees, agents, successors, subcontractors, suppliers and assigns, (collectively and individually, the "Indemnified Parties") against any and all claims, losses, damages, or expenses of whatever form or nature, including attorneys' fees and other costs of legal defense, whether direct or indirect (each, a "Claim"), that any one or more of the Indemnified Parties may sustain or incur as a result of (a) the party's supply of the Products or Software or sale of Products in violation of the terms of this Agreement; or (b) any wrongful acts or omissions committed by the Indemnifying Party, its affiliates, or their respective directors, officers, employees, agents, successors or assigns, including but not limited to (i) material and uncured breach of any of the provisions of this Agreement; (ii) the Indemnifying Party's negligence or other tortious conduct; and/or (iii) violation of applicable law. Notwithstanding the foregoing, each party will not be required to indemnify any Indemnified Party for any Claim which is caused, whether in whole or in part, by the Indemnified Party's gross negligence or willful misconduct.

## 4.    ORDERING

**4.1. Purchase Orders.** From time to time, urban-gro may submit orders for the Products to Supplier ("Purchase Orders"). Valid Purchase Orders from urban-gro are those that are sent via email with a PO attached, all others will not be considered valid and will not be paid for by urban-gro. Supplier will acknowledge receipt of urban-gro Purchase Orders on the same day Purchase Orders are received. If pricing on the PO does not match current Supplier pricing, Supplier must notify urban-gro and request an updated Purchase Order prior to fulfilling the order. Valid Purchase Orders will be binding on Supplier unless rejected pursuant to the terms of Section 4.2 within three (3) days of Supplier's receipt of the Purchase Order. Supplier will commit to begin fulfilling order upon receipt of Purchase Order and will communicate expected lead time to urban-gro upon acceptance. Purchase Orders will be in the format mutually agreed to by the parties, including notwithstanding, reference and acknowledgement to urban-gro's standard terms and conditions ("urban-gro T&Cs"), and such urban-gro T&Cs shall be binding upon the parties for each and every Purchase Order. For reference, the current urban-gro T&Cs are attached as Exhibit D. Purchase Orders will be required by Supplier to begin an order.

**4.1.1. Quoting Prior to Purchase Order.** From time to time, urban-gro may request price and delivery timeline quotes for Products from Supplier ("Quotes") prior to submitting a Purchase Order for those Products. These Quotes will include, unless otherwise agreed to in writing, urban-gro's cost, any MSRP, a valid date of the quote and any expiration date of that quote, an estimated delivery timeline, and vendor part numbers.

**4.2. Rejection of Purchase Orders.** Within three (3) days of receipt of a Purchase Order, Supplier may reject a Purchase Order if Supplier is unwilling to accept any terms or conditions in the applicable Purchase Order that supplement those contained in this Agreement. In the event of any conflict between the terms of a Purchase Order and this Agreement, the terms of the Purchase Order, including the urban-gro T&Cs, will take precedence if the Purchase Order is accepted by Supplier. Notwithstanding the foregoing, the terms of this Agreement shall control over the terms of a Purchase Order with respect to any terms or language concerning Intellectual Property or Confidentiality.

**4.3. Minimum Amounts.** urban-gro is not required to purchase any minimum amount or quantity of the Products.

**4.4. Delivery Dates.** Time, quantity and delivery to urban-gro are of the essence under this Agreement. Supplier will assemble, pack, mark, ship, and deliver Products in full within six to eight weeks of receipt of the applicable Purchase Order unless otherwise specified and agreed upon by urban-gro. Orders will ship in full unless explicitly agreed to by urban-gro in writing. If Supplier's delivery performance is delayed (other than by a Force Majeure event, as defined below) for an unreasonable length of time, and without

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

limiting urban-gro's other rights under this Agreement or applicable law, Supplier may, at urban-gro's sole election and Supplier's sole cost and expense: (a) approve a revised delivery date; (b) require expedited shipment; or (c) immediately cancel any applicable Purchase Order.

**4.5. Purchase Order Rescheduling and Cancellation.** urban-gro may reschedule its orders only upon written notice given at least ten (10) days before the scheduled shipment date. Purchase Orders may not be cancelled within fifteen (15) days of its earliest scheduled shipment date. In the event of an urban-gro caused delay, including but not limited to, issuing any Notice to Proceed, approving documentation, receiving equipment, permitting site access, preparation for commissioning or timely performance of customer obligations, Supplier reserves the right for day-for-day schedule relief for any subsequent contract obligations if schedule cannot be reasonably maintained. Further, Supplier will be entitled to recover additional cost, overhead and reasonable profit associated with such delay.

**4.6. Communication Protocol Around Orders.** All communication around orders, delivery times, shipment dates, etc., will be routed to urban-gro from Supplier through urban-gro Procurement function (purchasing@urban-gro.com). Any communication not through this channel around orders will not be considered official and Supplier will be solely responsible for any costs and expense to correct any errors that result from a lapse in that communication protocol. Similarly, there will be no direct communication from the Supplier to urban-gro's customers about any aspects of an order outside of delivery date without the inclusion of an urban-gro Director of Sale or higher level representative of urban-gro.

**5.    PRICING; INVOICING; PAYMENT; TAXES; TITLE; ACCEPTANCE OF GOODS**

**5.1. Pricing.** Except as otherwise provided in Exhibit A, all prices are expressed and payable in U.S. dollars. Supplier shall make available and sell all ordered Products to urban-gro at the prices set out in this Exhibit A to this Agreement, or as otherwise agreed upon by urban-gro and Supplier in a writing signed by both parties. Urban-gro T&C's shall control the following matters: invoicing, title, risk of loss, taxes, duties, insurance, shipping, and acceptance of goods.

**6.    INTELLECTUAL PROPERTY**

**6.1. Supplier Property.** Supplier is, and will remain, the owner of all right, title, and interest in and to the Intellectual Property Rights inhering in the Products, where such Intellectual Property Rights were created, developed, or brought to practice on or before the Effective Date of this Agreement (the "Supplier Property"). Unless otherwise agreed to by the parties, urban-gro shall not acquire any ownership interest in any of the Supplier Property.

**6.1.1. License of Supplier Property.** Supplier grants urban-gro a royalty-free, non-exclusive, nontransferable, license to use the Supplier Property to promote, distribute, advertise, use, sell, or develop the Products.

**6.3. Trademark Licenses.**

**6.3.1. Supplier Marks.** Supplier grants urban-gro a royalty-free, non-exclusive, non-transferable, worldwide, limited license to reproduce and use the Supplier Marks to identify or promote the Products. urban-gro's use of the Supplier Marks will be subject at all times to Supplier's then-current trademark policies so long as such policies are commercially reasonable and urban-gro has been provided with prior written notice of the same.

**6.3.2. urban-gro Marks.** During the Term of this Agreement, and subject to the limitations in this Agreement, urban-gro grants Supplier a non-exclusive, non-transferable, revocable right,

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

worldwide, limited license to use urban-gro Marks solely in conjunction with the creation and labeling of the Products. Supplier's use of the urban-gro Marks will at all times comply with applicable federal and state laws and reasonable written guidelines that may be provided by urban-gro. urban-gro grants no rights in the urban-gro Marks or in any other trademark, trade name, service mark, business name or goodwill of urban-gro except as explicitly licensed hereunder or by separate written agreement of the parties. Supplier acknowledges and agrees it has no right, title, or interest in or to any of the urban-gro Marks, other than as set forth in this Agreement, and that all goodwill from the use of the urban-gro Marks inures to the benefit of urban-gro. Supplier further agrees it will not at any time during or after this Agreement assert or claim any interest in, or take any action that may adversely affect the validity of, any urban-gro Marks. Upon expiration or termination of this Agreement, Supplier will immediately cease all use of all urban-gro Marks and will not thereafter, use any trademarks or product designations, that may be (in any part or whole) similar to or confusing with any urban-gro Marks. Supplier will notify urban-gro of any infringement of the urban-gro Marks.

**6.3.3. urban-gro Branding.** Notwithstanding any of the foregoing, Supplier acknowledges and agrees that urban-gro is authorized to label, brand, or otherwise use its urban-gro Marks in connection with any Product.

## 7.    **CONFIDENTIALITY**

**7.1. Definition.** "Confidential Information" is information about: business affairs, goods, and services; forecasts; confidential information and materials comprising or relating to Intellectual Property Rights; Trade Secrets, and other sensitive or proprietary information, belonging to a party or which is entrusted to a party from a third-party. Confidential Information includes any and all information disclosed in writing (whether tangible or electronic) or verbally by a party which should reasonably be considered confidential based on its subject matter and the circumstances of disclosure, and regardless of whether the information is marked with a "Confidential" legend or, in the case of verbal disclosure, the discloser fails to promptly alert the recipient of its confidential nature.

**7.2. Party Obligations.** Each receiving party will treat a disclosing party's Confidential Information with the same degree of care, diligence, and safeguards that it takes with its own Confidential Information, but in no event less than a reasonable degree of care. Each receiving party shall hold and maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of the disclosing party. Each receiving party shall carefully restrict access to Confidential Information to its officers, directors, employees, contractors and affiliates, consultants, or other agents (each, a "Representative") who are subject to nondisclosure restrictions at least as protective as those set forth in this Agreement, and who clearly need such access to participate on the receiving party's behalf in the performance of the receiving party's obligations under this Agreement. Each receiving party will not publish, copy, or otherwise disclose to any third party, use, or permit the use by any third party, any Confidential Information except in furtherance of performance under this Agreement. Upon a disclosing party's request, the receiving party shall, at the disclosing party's sole election, either: immediately return to the disclosing party all Confidential Information (including any and all records, notes, and other written, printed, or tangible materials in its possession pertaining to Confidential Information) then in its possession; or, destroy the same, and provide the disclosing party with written certification thereof. Each receiving party acknowledges and agrees that any breach of this Agreement by a Representative will constitute a breach of this Agreement by the receiving party. Each receiving party shall immediately notify the disclosing party upon discovery of any loss or unauthorized disclosure of the Confidential Information provide all reasonable cooperation to the disclosing party to protect the confidentiality of the Confidential Information

**7.2.1. Exceptions to Obligation.** The parties' obligations regarding Confidential Information will not extend to any information that: (a) is or becomes public knowledge through no wrongful act of the receiving party; (b) is already known to the receiving party, or is independently

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

developed by or for the receiving party without reference or use of the Confidential Information, as may be established by documentary evidence; (c) is rightfully obtained by the receiving party from any third party without similar restriction and (upon reasonable inquiry) without breach of any obligation owed to the disclosing party; or (d) is approved for release with the disclosing party's prior written approval.

**7.3.   No License.** Nothing in this section or otherwise will be construed to grant a receiving party a license to any of the disclosing party's Intellectual Property Rights, including but not limited to, its trade secrets or any unpublished patentable and/or copyrightable subject matter.

**7.4.   No Warranty.** Neither party warranties the accuracy of, or results of using, any of its Confidential Information.

**7.5.   Term of Obligation.** For Confidential Information that qualifies as a Trade Secret, each receiving party's obligations under this Section 7 will continue indefinitely, until such time that the Confidential Information becomes subject to the conditions of Section 7.2.1. For all other Confidential Information, each receiving party's obligations under this Section 7 will continue for the Term of this Agreement and for two (2) years following termination or expiration of this Agreement.

**7.6.   Acknowledgment.** The parties acknowledge and agree that the provisions of this section are reasonable and necessary measures designed to protect a disclosing party's legitimate proprietary interests in Confidential Information as valuable Trade Secret information.

## 8.   TERM & TERMINATION

**8.1. Term.** The initial term of this Agreement will commence on the Effective Date and will continue in force for two (2) years from such date, unless earlier terminated in accordance with this Section 8; thereafter, this Agreement will automatically renew for additional one (1) year periods (the initial term and any renewal terms together, the "Term"). If either party would like to terminate this Agreement prior to automatic renewal, the terminating party must give written notice to the other party at least ninety (90) days prior to expiration of the then-current term of its intent not to renew this Agreement.

**8.2. Termination for Breach.** Either party may terminate this Agreement, including all outstanding Purchase Orders, upon thirty (30) days' prior written notice of material breach (identifying the nature of the breach), and such breach remains uncured within the thirty (30) day period following written notice of material breach.

**8.3. Immediate Termination.** Either party may terminate this Agreement, including all outstanding Purchase Orders, effective immediately upon notice if the other party: (a) becomes insolvent, or is generally unable to pay or fails to pay, its debts as they become due; (b) files or has filed against it, a petition for voluntary or involuntary bankruptcy or otherwise becomes subject to any proceeding under any domestic or foreign bankruptcy or insolvency law; (c) seeks, winding-up, liquidation, composition or other relief with respect to it or its debts; (d) makes or seeks to make a general assignment for the benefit of its creditors; (e) applies for or has a receiver, trustee, custodian or similar agent appointed by order of any court of competent jurisdiction to take charge of or sell any material portion of its property or business; or (f) repudiates, or threatens to repudiate, any of its obligations under this Agreement.

**8.4. Effect of Termination.** Upon termination of this Agreement for any reason, all outstanding but unfulfilled Purchase Orders will be automatically terminated. Termination of the Agreement will also automatically terminate any license granted under this Agreement, provided however that any license which is required to carry out authorized post-term sales will be extended for the same effective period of time. Notwithstanding any termination of this Agreement, any provision which is expressly or impliedly intended

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

to survive termination will continue in full force and effect according to its terms; such provisions include, but are not limited to: Sections 6, 7, 3.2, 3.3, 8.4, 9, 10 and 11.

## 9.    INFRINGEMENT DEFENSE

**9.1. Duty.** In addition to the indemnification obligations under Section 3, Supplier will indemnify and defend at Supplier's expense any third-party Claim against urban-gro, urban-gro's authorized distributors, and urban-gro's customers (an "Indemnified Party"), which alleges that any Product infringes a U.S. patent, copyright, trademark or trade secret, and will pay all costs and damages awarded in a final, non-appealable judgment.

**9.2. Conditions.** urban-gro must promptly notify Supplier of any Claim under this Section 9 and provide Supplier with all reasonable cooperation and assistance that Supplier reasonably requests in the investigation and defense against any Claim. urban-gro's failure to fulfill these conditions will relieve Supplier of all of its obligations under this section, but only to the extent that any such failure materially prejudices the defense to the Claim. urban-gro shall have sole control of any defense, including the right to settle any Claim related to Products, with reasonable attorney fees, provided urban-gro may not enter into any settlement which admits an Indemnified Party's liability or otherwise binds the Indemnified Party without the Indemnified Party's prior written consent which shall not be unreasonably withheld.

**9.3. Exceptions.** Supplier is not obligated to indemnify under this Section 9 if the alleged infringement is based on: (i) the gross negligence or willful misconduct of the Indemnified Party; or (ii) bad faith and material failure to comply with any provisions of this Agreement.

## 10.    LIMITED LIABILITY

EXCEPT IN REGARDS TO ITS INDEMNITY OBLIGATIONS PAYABLE TO THIRD-PARTIES, LIABILITY FOR ACTS OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, OR LIABILITY FOR PERSONAL INJURY OR DEATH, UNDER NO CIRCUMSTANCES SHALL EITHER PARTY, ITS SUBSIDIARIES, OR THEIR RESPECTIVE REPRESENTATIVES BE LIABLE TO THE OTHER PARTY FOR CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE OR ENHANCED DAMAGES, ARISING OUT OF, OR RELATING TO, AND/OR IN CONNECTION THIS AGREEMENT, REGARDLESS OF (a) WHETHER SUCH DAMAGES WERE FORESEEABLE; (b) WHETHER OR NOT THE PARTY OR A REPRESENTATIVE WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES; AND (c) THE LEGAL OR EQUITABLE THEORY, WHETHER IN CONTRACT, TORT OR OTHERWISE, UPON WHICH THE CLAIM IS BASED. Under no circumstances whatsoever will either party be responsible for direct damages in excess of 100% of the contract value.

## 11.    NOTICES

All notices (including requests, consents or waivers) made under this Agreement must be made in writing and delivered by personal delivery, USPS certified mail (return receipt requested), overnight delivery by a nationally-recognized carrier, facsimile, electronic mail. Notices will be effective upon receipt. The parties will send notices to the addresses set forth on the signature page. A party may change its notice of name/address by providing written notice to the other party as required by this section.

## 12.    GENERAL TERMS

**12.1. Governing Law.** This Agreement and all matters arising out of, or relating to, this Agreement shall be governed by and construed by the laws of the State of Delaware, without regards to its conflicts

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

of laws principles and the United Nations Convention on Contracts for the International Sale of Goods. Any disputes under this Agreement may be brought in the state courts and the Federal courts located in Wilmington, Delaware, or in Denver, Colorado, and the Parties hereby consent to the personal jurisdiction and venue of these courts..

**12.2. Equitable Remedies.** Each party to this Agreement acknowledges and agrees that (a) a breach or threatened breach by such party of any of its obligations under Sections 6 and 7 would give rise to irreparable harm to the other party for which monetary damages would not be an adequate remedy and (b) if a breach or a threatened breach by such party of any such obligations occurs, the other party hereto will, in addition to any and all other rights and remedies that may be available to such party at law, at equity or otherwise in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction, without any requirement to (i) post a bond or other security, or (ii) prove actual damages or that monetary damages will not afford an adequate remedy. Each party to this Agreement agrees that such party shall not oppose or otherwise challenge the appropriateness of equitable relief or the entry by a court of competent jurisdiction of an order granting equitable relief, in either case, consistent with the terms of this Section 12.2.

**12.3. Independent Contractors.** The parties to this Agreement are independent contractors and nothing in this Agreement shall be deemed or construed as creating a joint venture, partnership, agency relationship, franchise, or business opportunity between Supplier and urban-gro. Neither party, by virtue of this Agreement, will have any right, power, or authority to act or create an obligation, express or implied, on behalf of the other. Each party assumes responsibility for the actions of their personnel under this Agreement and will be solely responsible for their supervision, daily direction and control, wage rates, withholding income taxes, disability benefits, or the manner and means through which the work under this Agreement will be accomplished. Except as otherwise provided in this Agreement, urban-gro has the sole discretion to determine urban-gro's methods of operation, urban-gro's accounting practices, the types and amounts of insurance urban-gro carries, urban-gro's personnel practices, urban-gro's advertising and promotion, urban-gro's customers, and urban-gro's service areas and methods. The relationship created hereby between the parties is solely that of supplier and reseller.

**12.4. Waivers.** Except as otherwise set forth herein, no waiver under this Agreement will be valid unless it is made in writing and signed by the waiving party. Failure to enforce any term of this Agreement is not a waiver of future enforcement of that or any other term.

**12.5. No Assignment.** The rights granted under this Agreement are personal to the parties, and the parties may not assign this Agreement, or any other of its rights or obligations hereunder, without the other party's prior express written consent, such consent not to be unreasonably withheld or delayed. Any purported assignment or delegation in violation of this section will be null and void. Notwithstanding the foregoing, urban-gro may assign this Agreement in connection with the sale, merger (by operation of law or otherwise) or transfer of all or substantially all of its assets.

**12.6. Successors and Assigns.** This Agreement is binding upon and inures to the benefit of the Parties to this Agreement and their respective permitted successors and assigns.

**12.7. No Third-Party Beneficiaries.** With the exception of third-party indemnitees under this Agreement, this Agreement benefits solely the parties to this Agreement and their respective permitted successors and assigns, and nothing in this Agreement, expressly or impliedly, confers on any other person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

**12.8. Severability.** If any provision of this Agreement is held to be illegal, invalid, or unenforceable, the provision will be enforced to the maximum extent permissible so as to effect the intent of the parties, and the remaining provisions of this Agreement will remain in full force and effect.

**12.9. Force Majeure.** Neither party will be liable to the other for failing to fulfill its obligations due to natural disaster, acts of God, civil or military authority, war, acts of terrorism, riots, or other causes beyond its reasonable control (each, a "Force Majeure event"), except for payment obligations. Notwithstanding the foregoing, in addition to the termination rights described in Section 11 above, in the event any Force Majeure event continues for more than sixty (60) days from a party's notice of a Force Majeure event, the other party may terminate this Agreement, including any outstanding and unfulfilled Purchase Order, immediately upon written notice.

**12.10. Counterparts; Headings.** This Agreement may be executed in counterparts, each of which will be deemed originals. Section headings in this Agreement are for convenience only and are not to be considered in its interpretation. The exchange of copies of this Agreement and of signature pages by facsimile or similar electronic transmission shall constitute effective execution and delivery of this Agreement as to the parties hereto, and such facsimile or electronic signatures on such counterparts are deemed originals for all purposes.

**12.11. Entire Agreement; Modifications.** This Agreement is the complete and exclusive statement of the agreement of urban-gro and Supplier about its subject matter and supersedes all prior oral and written agreements, understandings, and communications. This Agreement may not be modified or amended except by a written document that references this Agreement and has been signed by authorized representatives of both parties.

**12.12. Attorneys' Fees.** In the event any arbitration or litigation is brought by either party in connection with this Agreement, the prevailing party in such arbitration or litigation shall be entitled to recover from the other party all the costs, reasonable attorneys' fees and other expenses incurred by such prevailing party in the arbitration or litigation, and all other costs and expenses related thereto.

**12.13. NOTICE OF IMMUNITY.** NOTWITHSTANDING ANY OF THE FOREGOING OBLIGATIONS SET FORTH IN THIS AGREEMENT, THE PARTIES HEREBY RECOGNIZE AND PROVIDE NOTICE OF THE GRANTS OF IMMUNITY SET FORTH IN THE DEFEND TRADE SECRETS ACT OF 2016 § 7(A). An individual shall not be held criminally or civilly liable under any Federal or State Trade Secret law for the disclosure of a Trade Secret that is made in confidence to a Federal, State, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law. An individual shall not be held criminally or civilly liable under any Federal or State Trade Secret law for the disclosure of a Trade Secret that is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

*(rest of page intentionally left blank; signature page to immediately follow)*

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

IN WITNESS WHEREOF, Supplier and the urban-gro have caused this Agreement to be signed by their duly authorized representatives.

URBAN-GRO, INC.                                    Newterra Corporation, Inc.

Date: 4/24/2023                                    Date: 4/19/2023


Name: Jason T. Archer                              Name: Jay Harwood

Title: Chief Operating Officer                     Title: Director of Sales – Industrial


_Jason T. Archer_                                  _Jy H_
_____                          _____

Signature                                          Signature

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

**Exhibit A**

Product Catalogue

This agreement covers products and services by the Supplier, including but not limited to:

- Reverse Osmosis Systems
- Ozone Systems
- Filtration Equipment
- Chemical Treatment
- Other Water and Wastewater Treatment Equipment on a Custom Designed Basis
- Parts and Consumables
- Start-up Services
- Operational Support Services
- Remote Telemetry

All parts, equipment and services work by Supplier subject to mutually agreed Payment Milestones, payable Net 30 Days from date of invoice.

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

**Exhibit B**

Additional Relationship Scope

**Not applicable.**

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

**Exhibit C**

**NEWTERRA WARRANTY**

This Warranty Agreement is between Newterra Corporation, Inc. or Newterra Ltd. (known as Newterra) and the customer (known as the Buyer).

**General Warranty Statement**

1. Newterra warranties those products of its manufacture against defective workmanship or material for a period of 12 months from startup or 18 months from the date of notice of readiness to ship, whichever comes first.
2. This warranty is expressly and strictly limited to replacing, without charge (see Warranty Exclusions), any part or parts which proven to Newterra's satisfaction upon examination, to have been defective in design, material or workmanship, and which have not been neglected, abused or misapplied, provided the Buyer gives Newterra immediate written notice upon discovery of any claimed defect.
3. During the warranty period, parts will be shipped as necessary with instructions to replace, which can be further elaborated over phone or email; visit(s) of our technician to site can be covered if there is a service agreement in place; otherwise, actual charges will be quoted to the owner at that time, if required.
4. Newterra will also warranty those component parts manufactured by others to the extent of the original manufacturer's warranty. In any case, specific components warranties will be extended a minimum of one year from date of notice of readiness to ship.
5. Membranes, if used, will be covered under separate warranty statement.
6. This warranty shall not be construed as a fitness of purpose warranty nor a performance warranty.

**Warranty Exclusions**

1. Warranty coverage does not include:
   - Freight, labor, travel, and living expenses associated with parts replacement
   - Normal maintenance items such as lubrication, fan belts, and cleaning of the equipment
   - Consumable items such as filters and reagents.
   - Replacement of items due to normal wear and tear
   - System parts damaged because of Buyer changes to the system and/or PLC program without the written consent of Newterra.
   - System electrical components or motors damaged by inconsistent power, voltage fluctuations and/or frequent power failures.
2. If the Buyer, or any contractor employed by the Buyer, contracts an outside company, other than Newterra for modification of system equipment, without knowledge of Newterra, the warranty coverage will be denied.
3. If the Buyer, or any installation contractor employed by the Buyer, contracts outside Newterra for installation work or erection of quoted equipment, the Buyer shall assume full responsibility for said contract.
4. The warranty shall not cover normally scheduled preventative maintenance or maintenance services listed in O&M Manual unless specifically contracted with Newterra.
5. If Newterra's Supplier assesses a part evaluation fee as part of their warranty claim assessment process, then the Buyer will be required to pay this fee. All parts must be returned to Newterra, transportation prepaid, unless other arrangements have been pre-approved by Newterra.

**Warranty Validation**

1. Newterra requires that the system be commissioned by a Newterra factory trained technician unless specifically authorized by Newterra. Newterra authorization will be dependent on the qualifications of the Buyer's / contractor technicians.
2. Warranty validation is conditional upon timely receipt of:
   a. Signed Installation Checklist – by authorized Buyer representative, if not Newterra.
   b. As built Site drawings – by authorized Buyer representative, if not Newterra.
   c. Signed Pre-Commissioning Checklist – by authorized Buyer's representative, if not Newterra.
   d. Signed Commissioning Checklist – by authorized Buyer's representative, if not Newterra.
3. If the warranty validation requirements are not followed, Newterra reserves the right to deny warranty coverage.

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

**Warranty Conditions**

The system must be maintained and serviced in accordance with the schedule and procedures listed in the system O&M Manual. Failure to follow Newterra's recommendations may result in a denial of warranty coverage. Newterra reserves the right to review maintenance records as part of the warranty claim assessment process.

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

## **Exhibit D**

## Purchase Terms and Conditions

urban-gro Standard Purchase Order Terms and Conditions

The following terms and conditions (these "Terms") are incorporated into Purchase Orders submitted to Suppliers by urban-gro, Inc. ("urban-gro"). These Terms will apply to both Goods and/or Services as applicable. Acceptance of a Purchase Order, delivery of Goods, and/or the performance of Services will imply acceptance by Supplier of these Terms.

1. **Definitions**.

   a. "Goods" means the goods that are required to be delivered by Supplier in accordance with an approved Purchase Order. All Goods will include any ancillary items necessary to be functional and perform as designed.

   b. "Minimum General Liability" means insurance coverage in an amount not less than $2,000,000.

   c. "Purchase Order" means the purchase order between urban-gro and Supplier for the purchase of Goods and/or Services.

   d. "Required Delivery Date" means the date of delivery for Goods or performance of Services as detailed in an accepted Purchase Order.

   e. "Services" means any service to be provided by Supplier to urban-gro as stated on an accepted Purchase Order.

   f. "Specifications" means the requirements, characteristics, and specifications for the Goods and/or Services that are being sourced in an accepted Purchase Order, its exhibits or addendums specifying requirements and/or expectations, operational and technical features, functionality, and standards or levels of service performance for both Goods and/or Services.

   g. "Supplier" means the party indicated on the Purchase Order that urban-gro is contracting with for the purchase of Goods and/or Services.

2. **Purchase Order; Additional Documents**. These Terms include and hereby incorporate by reference any associated Purchase Order between urban-gro and Supplier, any additional exhibits referenced and/or attached to such Purchase Order, and any other related documentation to effectively relay the Good and/or Service requirements to the Supplier from urban-gro.

3. **Confidentiality**. Except as required by Supplier to perform its obligation hereunder, Supplier shall not disclose any information regarding the business relationship between the parties, urban-gro's use of the Goods and/or Services, or any other information arising from or related to business activities.

4. **Goods and/or Services**.

   a. Supplier agrees to supply and deliver the Goods and/or perform Services to urban-gro or its consignee, representative, or contractor as stated on the Purchase Order subject to these Terms.

   b. Supplier shall properly pack, ship, and cause to be delivered Goods to the agreed upon location as stated in the Purchase Order and utilize the agreed upon packing, shipping, and invoicing terms set forth on the Purchase Order.

   c. Goods and/or services will be delivered and/or performed by the Required Delivery Date stated in the Purchase Order. If Supplier is unable to meet the original Required Delivery Date (a "Delivery Default"), they must notify urban-gro immediately. If a Delivery Default occurs, urban-gro may terminate the Purchase Order in whole or in part prior to delivery, without incurring liability or cost on 10-days' written notice to Supplier.

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

d. Supplier shall be wholly responsible for the delivery of any Goods and/or Services. Ownership and risk of loss or damage shall pass to urban-gro upon receipt of Goods and/or Services at the agreed upon location, unless otherwise agreed to by urban-gro.

e. Supplier shall follow all instructions of urban-gro and cooperate with urban-gro's customs broker as directed by urban-gro (including by providing requested shipping documentation) with respect to all Goods that originate from sources or suppliers based outside the United States. Supplier shall comply with all the requirements of the United States Customs or any other governmental or regulatory authority with respect to the import of Goods from outside the United States.

5. **Inspection; Acceptance and Rejection**.

a. All shipments of Goods and performance of Services shall be subject to urban-gro's right of inspection. Urban-gro shall have **thirty (30) days** (the "Inspection Period") following the delivery of the Goods or performance of Services to undertake such inspection, and upon such inspection urban-gro shall either accept the Goods and/or Services ("Acceptance") or reject them. Urban-gro shall have the right to reject any Goods that are delivered in excess of the quantity ordered or that are damaged or defective. In addition, urban-gro shall have the right to reject any Goods and/or Services that are not in compliance with the Specifications or these Terms. Transfer of title to urban-gro of Goods shall not constitute urban-gro's acceptance of those Goods. Urban-gro shall provide Supplier notice of any Goods and/or Services that are rejected, together with the reasons for such rejection within the Inspection Period. If urban-gro does not provide Supplier with any notice of rejection within the Inspection Period, then urban-gro will be deemed to have accepted such Goods and/or Services. Urban-gro's inspection, testing, or acceptance or use of the Goods and/or Services hereunder shall not limit or otherwise affect Supplier's warranty obligations with respect to the Goods and/or Services, and such warranties shall survive inspection, testing, acceptance and use of the Goods and/or Services.

b. Urban-gro shall be entitled to return rejected Goods to Supplier at Supplier's expense and risk of loss for, at urban-gro's option, either: (i) full credit or refund of all amounts paid by urban-gro to Supplier for the rejected Goods, including any shipping and handling charges; or (ii) replacement Goods to be received within the time period specified by Urban-gro. Title to rejected Goods that are returned to Supplier shall transfer to Supplier upon such delivery and such Goods shall not be replaced by Supplier except upon written instructions from urban-gro. Supplier shall not deliver Goods that were previously rejected on grounds of non-compliance with these Terms, unless delivery of such Goods is approved in writing by urban-gro.

6. **Price/Payment Terms**. Prices for the Goods and/or Services will be as agreed to in the Purchase Order. Price increases or charges not expressly set out in the Purchase Order shall not be effective unless agreed to in advance in writing by urban-gro. Supplier will issue all invoices within 30 days of shipment or delivery of any Goods and/or Services. All invoices issued by Supplier must meet urban-gro's requirements, and at a minimum shall reference the applicable Purchase Order. Urban-gro will pay the undisputed portion of properly rendered invoices within 30 days from the invoice date (unless otherwise agreed in writing). Urban-gro shall have the right to withhold payment of any invoiced amounts that are disputed in good faith until the parties reach an agreement with respect to such disputed amounts and such withholding of disputed amounts shall not be deemed a breach of these Terms nor shall any interest be charged on such amounts. Notwithstanding the foregoing, urban-gro agrees to pay the balance of the undisputed amounts on any invoice that is the subject of any dispute within the time periods specified herein.

7. **Taxes**. Unless otherwise stated in a Purchase Order, all prices or other payments stated in the Purchase Order are pre-tax. Supplier shall itemize all related taxes on any such invoice. Urban-gro will pay all itemized taxes to Supplier when the invoice is due. Supplier will remit all relevant taxes to the applicable government authority as required. Notwithstanding any other provision of these Terms, urban-gro may withhold from all amounts payable to Supplier all applicable withholding taxes and remit those taxes to the appropriate government authorities. For the avoidance of doubt, urban-gro shall not be required under these Terms to pay any taxes to Supplier where urban-gro has determined that its purchase is tax exempt.

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

8. **Hazardous Materials**. Supplier agrees to provide urban-gro the following items related to the use of any hazardous substances associated with the Goods and/or Services: (a) all documentation to verify the material composition, on a substance by substance basis, including quantity used of each substance, of any Goods, and/or of any process used to make, assemble, use, maintain or repair any Goods; or (b) all documentation to verify that any Goods and/or any process used to make, assemble, use, maintain or repair any Goods, do not contain, and the Services do not require the use of, any particular hazardous substances specified by urban-gro.

9. **Legal Compliance; Workplace Safety**. In carrying out its obligations under these Terms, including the performance of Services, Supplier shall always comply with all applicable local, state, and federal, laws, regulations, standards, and codes. Supplier shall obtain all applicable permits, licenses, exemptions, consents and approvals required for the Supplier to manufacture and deliver the Goods and/or perform the Services requested on the Purchase Order.

10. **Indemnification**. To the fullest extent permitted by law and at its own cost and expense, Supplier shall defend, indemnify, and hold harmless urban-gro and its respective directors, shareholders, partners, officers, members, managers, employees, successors, assigns, mortgagees and/or other designees (collectively, the "urban-gro Indemnitees"), from and against any and all claims, demands, suits, actions, proceedings, liabilities, judgments, awards, losses, damages, costs and expenses, including reasonable attorneys' fees and expenses (the "Claims"): (i) on account of bodily or personal injury, sickness, disease, or death sustained by any person or persons, or injury or damage to or destruction of any property, including, without limitation, loss of use thereof, directly or indirectly arising out of or in connection with or relating to acts or omissions in connection with or pursuant to Supplier's work or relationship with urban-gro, (ii) that arise from any claim that the Goods or Services infringe the intellectual property rights of any person, or (iii) that arise from Supplier's breach of any of Supplier's representations and warranties in these Terms. This indemnification shall not apply to the extent such Claims are caused by the negligent or intentional acts or omissions of urban-gro. Supplier shall and does hereby assume and agrees to pay for the defense of all such Claims. If any such Claim is made or brought against any urban-gro Indemnitee, Supplier, upon notice from such urban-gro Indemnitee, shall, at Supplier's sole expense, resist or defend such suit, action, or proceeding by counsel reasonably acceptable to urban-gro.

If for any reason any part of this indemnification shall be in contravention of any statute, ordinance, regulation or rule, or any decision of any court or adjudicatory body, then this indemnification provision shall survive to the extent permitted thereby.

11. **Warranty**.

   a. **Product Warranties**. Supplier warrants to urban-gro that for one year (or such longer period provided by Supplier's standard warranties) commencing on the date of acceptance of any applicable Goods and/or Services (the "Warranty Period") all Goods provided hereunder shall: (i) be of quality condition and perform as represented by Supplier; (ii) fit the intended purpose; (iii) be free of defects in design, material and workmanship; (v) comply with the Specifications; (vi) be free from any liens on title; and (vii) be compliant with all applicable local, state and federal laws, regulations, standards, and codes.

   b. **Service Warranties**. Supplier shall perform all Services: (i) exercising professionalism, expertise, thoroughness, care, and integrity that would be reasonably expected of any other skilled and experienced service provider under similar environments expected of the Services included in these Terms; (ii) in accordance with provided Specifications and urban-gro policies; and (iii) using only personnel with the skills, training, expertise, and qualifications necessary to carry out the Services. Urban-gro may object to Supplier's use of specific personnel engaged in the performance of Services who appear to be lacking suitable skills or qualifications, engage in misconduct, constitute a safety risk or hazard or are incompetent or negligent. Supplier shall promptly remove any such personnel subject to urban-gro's objection from the performance of any Services upon receipt of notice of such objection and shall not re-employ the removed person in connection with the Services performed under these Terms.

   c. **Manufacturer Warranties**. Supplier shall assign to urban-gro all manufacturer's warranties for Goods not manufactured by or for Supplier, and shall take all necessary steps as required by such third-party manufacturers to effect assignment of such warranties to urban-gro.

DocuSign Envelope ID: 94245DAD-236F-43F5-8004-365952681055

12. **Warranty Remedies**.

    a.   In the event of breach of any of the warranties in these Terms, Supplier will, at urban-gro's option and Supplier's expense, refund the purchase price for, or correct or replace the affected Goods, or re-perform the unacceptable Services, within 10 days after notice by urban-gro to Supplier of any such breach. All costs associated with any warranty repair or replacement, including costs of re-performance, costs to inspect the Goods and/or Services, costs to transport the Goods from urban-gro to Supplier and return shipment to urban-gro, and costs resulting from supply chain interruptions, are the responsibility of Supplier. If Goods are adequately repaired and/or replaced, or Services are re-performed in a reasonable fashion, the new Warranty Period will commence on the date of acceptance of the corrected Good and/or Service by urban-gro. If Supplier fails to repair or replace the Product within the time period required above, urban-gro may repair or replace the Goods at Supplier's expense.

13. **Intellectual Property**. Supplier represents and warrants to urban-gro that all Goods and/or Services will not be in violation of or infringe any intellectual property rights of any person. To the extent that any Goods or Services contain any intellectual property of Supplier, Supplier hereby grants to urban-gro a worldwide, royalty-free, non-exclusive, perpetual and freely assignable license to use, copy, modify and distribute such intellectual property as part of the Goods or Services.

14. **Termination**. Urban-gro may terminate these Terms, any applicable Purchase Order, or any part thereof, if Supplier fails to comply with these Terms and/or any Purchase Order, or fails to provide Supplier, upon request, with adequate assurances of future performance. In the event of such termination, urban-gro shall not be liable to the Supplier for any amount for Goods or Services not accepted.

15. **Insurance**. Supplier agrees to maintain comprehensive commercial general liability insurance in an amount not less than the required Minimum General Liability for the duration of Supplier's performance under these Terms. Supplier represents and warrants that it has in place with reputable insurers such insurance policies in coverage amounts that would be maintained by a prudent supplier of goods and services similar to the Goods and Services provided hereunder, including, as applicable, professional errors and omissions liability insurance and comprehensive commercial general liability insurance (including product liability coverage, all-risk contractors' equipment insurance, and automobile liability insurance). In addition, Supplier will take out and maintain, at its own cost, such insurance policies and coverages as may be reasonably required by urban-gro from time to time. Supplier will promptly deliver to urban-gro, as and when requested, written proof of such insurance. Supplier shall name urban-gro as an additional insured under any such policies. Such insurance will provide that it cannot be cancelled, or materially changed so as to affect the coverage provided under these Terms, without the insurer providing at least 30 days prior written notice to urban-gro.

16. **Miscellaneous**. These terms shall be governed, construed, and interpreted in accordance with the laws of the State of Delaware, without regard to the provisions of conflicts of laws thereof. If any provision of these Terms is determined to be unenforceable or invalid for any reason whatsoever, in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part thereof and all other provisions shall continue in full force and effect. Supplier may not assign or subcontract these Terms, in whole or in part, without urban-gro's prior written consent. These Terms shall enure to the benefit of and be binding upon the parties and their respective legal personal representatives, heirs, executors, administrators, assigns or successors. Any reference in these Terms to "written notice" shall include notice by email, where there is reasonable certainty that such email notice will be received at a valid email address previously provided to the sending party by the receiving party and currently monitored by the receiving party.

# EXHIBIT B

# Statement -INC

 **newterra**

## Urban-Gro

AP - Debbie Pena
1751 Panorama Pt Unit G
Lafayette, CO 80026-9452
USA

**Newterra Corporation Inc.**
1555 Coraopolis Heights Road
Ste. 4100
Coraopolis , PA 15108

| | |
|---|---|
| Report Start Date: | 12/31/22 |
| Report End Date: | 10/31/25 |
| Report Print Date: | 10/16/25 |
| Customer No: | C20671 |

Email:    receivablesinc@newterra.com
Phone:   1-724-703-3020

### Please send Any/All issues to Newterra AR at the email above - Immediately

| Posting Date | Document No. | Customer Reference | Due Date | Original Amt | Remaining Amt | Running Total |
|---|---|---|---|---|---|---|
| **Entries USD** | | | | | | |
| | | | | | | 0.00 |
| 03/14/25 | PSINC-008014 | P008306 | 04/13/25 | 50,280.00 | 50,280.00 | 50,280.00 |
| 05/28/25 | PSINC-008765 | P008306 | 06/27/25 | 126,820.00 | 126,820.00 | 177,100.00 |
| 06/17/25 | PSINC-008989 | P008601 | 07/18/25 | 9,780.75 | 9,780.75 | 186,880.75 |
| 07/16/25 | PSINC-009299 | P008623 | 08/16/25 | 1,250.00 | 1,250.00 | 188,130.75 |
| | | | | | **USD** | **188,130.75** |
| | | | | | | |
| **Overdue Entries USD** | | | | | | |
| 03/14/25 | PSINC-008014 | P008306 | 04/13/25 | 50,280.00 | 50,280.00 | |
| 05/28/25 | PSINC-008765 | P008306 | 06/27/25 | 126,820.00 | 126,820.00 | |
| 06/17/25 | PSINC-008989 | P008601 | 07/18/25 | 9,780.75 | 9,780.75 | |
| 07/16/25 | PSINC-009299 | P008623 | 08/16/25 | 1,250.00 | 1,250.00 | |
| | | | | **USD** | **188,130.75** | |

# INVOICE  PSINC-009299

 newterra

| Bill to: | Ship to: | Remit to: |
|---|---|---|
| Urban-Gro | Monticello | See Remit to Information at Bottom |
| AP - Debbie Pena | Gordon Oakley | EIN #: 85-3341066 |
| 1751 Panorama Pt Unit G | 1948 W Capps Hwy | Email: receivablesinc@newterra.com |
| Lafayette, CO 80026-9452 | Monticello, FL 32344-7106 | Phone: 1-724-703-3020 Ext 108 |
| USA | USA | Fax: 1-724-546-5155 |

| Invoice Date: | July 16, 2025 |
|---|---|
| Cust Purch Order: | P008623 |
| Sales Order No: | SOINC-005064 |
| Shipping Agent: | FEDEX |
| Tracking No: | 462746922514 |
| Payment Terms: | Net 30 days |
| Due Date: | August 16, 2025 |
| Your Reference: | |

Salesperson    Sahyra Nunez

**Please send Any/All issue to Newterra AR Immediately at Email above**

Each line item will need to ship separately

| Item | Description | Shipment Date | Qty | UoM | Price | Discount | Line Amount Excl. Tax |
|---|---|---|---|---|---|---|---|
| 62627 | Bag, Size #2, Oil Absorbing, OA25-P2RPO | 07/14/25 | 25 | Each | 50.00 | 0.00 | 1,250.00 |
| | | | | | **Subtotal** | | **1,250.00** |
| | | | | | Total Tax | | 0.00 |
| | | | | | **Total $ Incl. Tax** | | **1,250.00** |

USD

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

| Remit to Address (Checks) | ACH | | Bank Address | Account Information |
|---|---|---|---|---|
| Newterra Corporation, Inc. | | | M&T Bank N.A. | Account: 9893955840 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Corporation, Inc. |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1555 Coraopolis Heights Road |
| Coraopolis, PA  USA   15108 | Currency: $USA | | Phone#: 814-947-5850 | Suite 4100 |
| | | | | Coraopolis, PA  USA   15108 |
| | | | | |
| | | | | |

# INVOICE PSINC-008765

**newterra**

Bill to:
Urban-Gro
AP - Debbie Pena
1751 Panorama Pt Unit G
Lafayette, CO 80026-9452
USA

Ship to:
Monticello
Gordon Oakley
1948 W Capps Hwy
Monticello, FL 32344-7106
USA

Remit to:
See Remit to Information at Bottom
EIN #: 85-3341066
Email: receivablesinc@newterra.com
Phone: 1-724-703-3020 Ext 108
Fax: 1-724-546-5155

| | | |
|---|---|---|
| Invoice Date: | May 28, 2025 | |
| Cust Purch Order: | P008306 | |
| Sales Order No: | | |
| Shipping Agent: | | Salesperson David Alvarado |
| Tracking No: | | Project No. 2404501 |
| Payment Terms: | Net 30 days | |
| Due Date: | June 27, 2025 | |
| Your Reference: | | |

**Please send Any/All issue to Newterra AR Immediately at Email above**

| Item | Description | Ship Date | Qty | UoM | Unit Price | Disc | Line Amt Exl Tax |
|---|---|---|---|---|---|---|---|
| | Condensate Treatment and Recovery RO - 35% on Notification of Readiness to Ship | 05/22/25 | 0.35 | | 335,200.00 | 0.00 | 117,320.00 |
| | Freight for Condensate & RO Skids | 05/22/25 | 1 | | 9,500.00 | 0.00 | 9,500.00 |
| | | | | | **Subtotal** | | **126,820.00** |
| | | | | | **Total Tax** | | **0.00** |
| | | | | | **Total $ Incl. Tax** | | **126,820.00** |

USD

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

| Remit to Address (Checks) | ACH | | Bank Address | Account Information |
|---|---|---|---|---|
| Newterra Corporation, Inc. | | | M&T Bank N.A. | Account: 9893955840 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Corporation, Inc. |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1555 Coraopolis Heights Road |
| Coraopolis, PA USA 15108 | Currency: $USA | | Phone#: 814-947-5850 | Suite 4100 |
| | | | | Coraopolis, PA USA 15108 |

# INVOICE  PSINC-008014

**newterra**

| Bill to: | Ship to: | Remit to: |
|---|---|---|
| Urban-Gro | Urban-Gro | See Remit to Information at Bottom |
| AP - Debbie Pena | AP - Debbie Pena | EIN #: 85-3341066 |
| 1751 Panorama Pt Unit G | 1751 Panorama Pt Unit G | Email: receivablesinc@newterra.com |
| Lafayette, CO 80026-9452 | Lafayette, CO 80026-9452 | Phone: 1-724-703-3020 Ext 108 |
| USA | USA | Fax: 1-724-546-5155 |

| | | |
|---|---|---|
| Invoice Date: | March 14, 2025 | |
| Cust Purch Order: | P008306 | |
| Sales Order No: | | |
| Shipping Agent: | | Salesperson David Alvarado |
| Tracking No: | | Project No. 2404501 |
| Payment Terms: | Net 30 days | |
| Due Date: | April 13, 2025 | |
| Your Reference: | | |

**Please send Any/All issue to Newterra AR Immediately at Email above**

| Item | Description | Ship Date | Qty | UoM | Unit Price | Disc | Line Amt Exl Tax |
|---|---|---|---|---|---|---|---|
| | Condensate Treatment and Recovery RO - 15% on Commencement of Assembly | | 0.15 | | 335,200.00 | 0.00 | 50,280.00 |
| | | | | | Subtotal | | **50,280.00** |
| | | | | | Total Tax | | 0.00 |
| | | | | | **Total $ Incl. Tax** | | **50,280.00** |
| | | | | | | | **USD** |

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

| Remit to Address (Checks) | ACH | | Bank Address | Account Information |
|---|---|---|---|---|
| Newterra Corporation, Inc. | | | M&T Bank N.A. | Account: 9893955840 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Corporation, Inc. |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1555 Coraopolis Heights Road |
| Coraopolis, PA  USA  15108 | Currency: $USA | | Phone#: 814-947-5850 | Suite 4100 |
| | | | | Coraopolis, PA  USA  15108 |

# INVOICE  PSINC-008989

**newterra**

| | | | |
|---|---|---|---|
| **Bill to:** | **Ship to:** | **Remit to:** | |
| Urban-Gro | Trulieve-Jeffco | See Remit to Information at Bottom | |
| AP - Debbie Pena | Gordon Oakley | EIN #: | 85-3341066 |
| 1751 Panorama Pt Unit G | 1948 W Capps Hwy Bldg 1 | Email: | receivablesinc@newterra.com |
| Lafayette, CO 80026-9452 | Building #1 | Phone: | 1-724-703-3020 Ext 108 |
| USA | Monticello, FL 32344-7106 | Fax: | 1-724-546-5155 |

| | |
|---|---|
| Invoice Date: | June 18, 2025 |
| Cust Purch Order: | P008601 |
| Sales Order No: | SOINC-004906 |
| Shipping Agent: | |
| Tracking No: | |
| Payment Terms: | Net 30 days |
| Due Date: | July 18, 2025 |
| Your Reference: | |

Salesperson    Sahyra Nunez

**Please send Any/All issue to Newterra AR Immediately at Email above**

Each line item will need to ship separately

| Item | Description | Shipment Date | Qty | UoM | Price | Discount | Line Amount Excl. Tax |
|---|---|---|---|---|---|---|---|
| 60615 | Filter, Max-A High Flow, Bothers Filtration, BHFA-PP-40-N-0500-E-S-H<br>Media: Polypropylene, Max Flowrate:  75m/hr | 06/09/25 | 12 | Each | 167.75 | 0.00 | 2,013.00 |
| 62627 | Bag, Size #2, Oil Absorbing, OA25-P2RPO | 06/09/25 | 36 | Each | 50.00 | 0.00 | 1,800.00 |
| PW-AV-V4000-500D | Antiscalant, Vitec 4000, 500lb drum | 06/09/25 | 1 | Each | 3,272.75 | 0.00 | 3,272.75 |
| 99FREIGHTOUT | Freight Prepay and Add  - High Flow Filters | 06/09/25 | 1 | Each | 845.00 | 0.00 | 845.00 |
| 99FREIGHTOUT | Freight Prepay and Add - Bag Filters | 06/09/25 | 1 | Each | 100.00 | 0.00 | 100.00 |
| 99FREIGHTOUT | Freight Prepay and Add - Antiscalant | 06/09/25 | 1 | Each | 1,750.00 | 0.00 | 1,750.00 |

| | |
|---|---|
| Subtotal | 9,780.75 |
| Total Tax | 0.00 |
| Total $ Incl. Tax | 9,780.75 |

USD

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

| **Remit to Address (Checks)** | **ACH** | | **Bank Address** | **Account Information** |
|---|---|---|---|---|
| Newterra Corporation, Inc. | | | M&T Bank N.A. | Account: 9893955840 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Corporation, Inc. |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1555 Coraopolis Heights Road |
| Coraopolis, PA  USA   15108 | Currency: $USA | | Phone#: 814-947-5850 | Suite 4100 |
| | | | | Coraopolis, PA  USA   15108 |

# Statement -LTD

 **newterra**

## Urban-Gro

Accounts Payable
1751 Panorama Pt Unit G
Unit G
Lafayette, CO 80026-9452

**Newterra Ltd**
1291 California Ave
P.O. Box 1517
Brockville, ON K6V 5Y6

| | | | |
|---|---|---|---|
| Report Start Date: | 12/31/22 | Email: | receivablesltd@newterra.com |
| Report End Date: | 10/31/25 | Phone: | 1-800-420-4056 |
| Report Print Date: | 10/16/25 | | |
| Customer No: | CL20338 | | |

## Please send Any/All issues to Newterra AR at the email above - Immediately

| Posting Date | Document No. | Customer Reference | Due Date | Original Amt | Remaining Amt | Running Total |
|---|---|---|---|---|---|---|
| **Entries USD** | | | | | | |
| | | | | | | 0.00 |
| 12/16/24 | PSLTD-004956 | P008284 | 01/15/25 | 29,302.99 | 3,167.44 ✓ | 3,167.44 |
| 04/07/25 | PSLTD-005625 | VERBAL BEN G P008535 | 05/07/25 | 1,023.97 | 1,023.97 ✓ | 4,191.41 |
| 04/08/25 | PSLTD-005635 | P008535 | 05/07/25 | 457.96 | 457.96 ✓ | 4,649.37 |
| | | | | | **USD** | **4,649.37** |

# INVOICE  PSLTD-005625



Bill to:
Urban-Gro
Accounts Payable
1751 Panorama Pt Unit G
Unit G
Lafayette, CO 80026-9452
USA

Ship to:
New Integration, LLC
Gordon Oakley 850.459.7264
1265 County Road 1A
Ironton, OH 45638-8698
USA

Remit to:
See Remit to Information at Bottom

| | | | |
|---|---|---|---|
| Invoice Date: | April 8, 2025 | Email: | receivablesltd@newterra.com |
| Cust Purch Order: | VERBAL BEN G P008535 | Phone: | 1-800-420-4056 |
| Sales Order No: | SOLTD-007197 | Fax: | 1-289-203-1319 |
| Shipping Agent: | | Salesperson | Larry Hayward |
| Tracking No: | 15075526234 | | |
| Payment Terms: | Net 30 days | Bus GST# | 133432591 |
| Due Date: | May 7, 2025 | | |
| Your Reference: | | | |

**Please send Any/All issue to Newterra AR Immediately at Email above**

RUSH
Please ship for delivery no later than Wednesday 4/9/2025

| Item | Description | Shipment Date | Qty | UoM | Price | Discount | Line Amount Excl. Tax |
|---|---|---|---|---|---|---|---|
| 46383 | NT 700PNSF  ANTISCALANT, BROAD SPECTRUM 5 GALLON PAIL NSF APPROVED | 04/10/25 | 1 | Each | 388.80 | 0.00 | 388.80 |
| 60615 | Filter, Max-A High Flow, Brothers Filtration, BHFA-PP-40 -N-0500-E-S-H Media: Polypropylene, Max Flowrate:  75m/hr | 04/10/25 | 2 | Each | 164.00 | 0.00 | 328.00 |
| 99FREIGHTOUT | Outbound Freight/Tariff (Sales) | 04/10/25 | 1 | Each | 307.17 | 0.00 | 307.17 |

| | |
|---|---|
| **Subtotal** | 1,023.97 |
| Total Tax | 0.00 |
| **Total $ Incl. Tax** | 1,023.97 |

USD

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

| Remit to Address (Checks) | ACH | | Bank Address | Account Information |
|---|---|---|---|---|
| Newterra Ltd | | | M&T Bank N.A. | Account: 9893955857 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Ltd |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1291 California Ave |
| Coraopolis, PA  USA    15108 | | | Phone#: 814-947-5850 | PO Box 1517 |
| | | | | Brockville, ON  K6V5Y6 |
| | | | | |
| | | | | |

# INVOICE  PSLTD-005635



| Bill to: | | Ship to: | Remit to: |
|---|---|---|---|
| Urban-Gro | | New Integration, LLC | See Remit to Information at Bottom |
| Accounts Payable | | Gordon Oakley 850.459.7264 | |
| 1751 Panorama Pt Unit G | | 1265 County Road 1A | |
| Unit G | | Ironton, OH 45638-8698 | |
| Lafayette, CO 80026-9452 | | USA | |
| USA | | | |

| Invoice Date: | April 9, 2025 | | Email: | receivablesltd@newterra.com |
|---|---|---|---|---|
| Cust Purch Order: | P008535 | | Phone: | 1-800-420-4056 |
| Sales Order No: | SOLTD-007198 | | Fax: | 1-289-203-1319 |
| Shipping Agent: | | | Salesperson | Larry Hayward |
| Tracking No: | | | | |
| Payment Terms: | Net 30 days | | Bus GST# | 133432591 |
| Due Date: | May 7, 2025 | | | |
| Your Reference: | | | | |

**Please send Any/All issue to Newterra AR Immediately at Email above**

| Item | Description | Shipment Date | Qty | UoM | Price | Discount | Line Amount Excl. Tax |
|---|---|---|---|---|---|---|---|
| 46383 | NT 700PNSF   ANTISCALANT, BROAD SPECTRUM 5 GALLON PAIL NSF APPROVED | 04/17/25 | 1 | Each | 388.80 | 0.00 | 388.80 |
| 99FREIGHTOUT | Outbound Freight/Tariff (Sales) | 04/17/25 | 1 | Each | 69.16 | 0.00 | 69.16 |
| | | | | | Subtotal | | 457.96 |
| | | | | | Total Tax | | 0.00 |
| | | | | | **Total $ Incl. Tax** | | **457.96** |

USD

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

| Remit to Address (Checks) | ACH | | Bank Address | Account Information |
|---|---|---|---|---|
| Newterra Ltd | | | M&T Bank N.A. | Account: 9893955857 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Ltd |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1291 California Ave |
| Coraopolis, PA  USA   15108 | | | Phone#: 814-947-5850 | PO Box 1517 |
| | | | | Brockville, ON  K6V5Y6 |
| | | | | |
| | | | | |
| | | | | |

# INVOICE PSLTD-004956

**newterra**

Bill to:
Urban-Gro
Accounts Payable
1751 Panorama Pt Unit G
Unit G
Lafayette, CO 80026-9452
USA

Ship to:
New Integration, LLC
Gordon Oakley 850.459.7264
1265 County Road 1A
Ironton, OH 45638-8698
USA

Remit to:
See Remit to Information at Bottom

| | | | |
|---|---|---|---|
| Invoice Date: | December 16, 2024 | Email: | receivablesltd@newterra.com |
| Cust Purch Order: | P008284 | Phone: | 1-800-420-4056 |
| Sales Order No: | | Fax: | 1-289-203-1319 |
| Shipping Agent: | | Salesperson | Scott Kirk |
| Tracking No: | | Project No. | 2404242 |
| Payment Terms: | Net 30 days | Bus GST# | 133432591 |
| Due Date: | January 15, 2025 | | |
| Your Reference: | | | |

**Please send Any/All issue to Newterra AR Immediately at Email above**

EPRO™ LMF-20 Series
31,00 gallons per day 21 gpm Standard Features
• Flow Meters: Digital Concentrate & Permeate and Analog Recycle
• Grundfos CR-Series 316 SS Pump w/TEFC Motor 10HP
• 4 Membranes: 8inx40in, TFC Brackish Water
• 2 FRP Side-ported, 300 psi Pressure Vessels
• Low Pressure Switch
• Voltage: 460V/60Hz/3 Phase
• Prefilter Housing: 316SS w/ 5 micron cartridges
• Pressure Gauges: 2.5in Dia., 316SS, Pre- & Post-Filter, First Array Feed, Concentrate, Permeate & Interstage
• Variable Frequency Drive (VFD)
• Automatic Inlet Feedwater Valve
• 316SS High Pressure Valves (Concentrate, Recycle)
• Series 200 RO Controller (microprocessor controlled)
• 2in Inlet Size
• 2in Permeate Size
• 20 psi Inlet Pressure Required
• Automatic Fast Flush
• TDS Monitor
• Concentrate Recycle Loop
• Sample Valves
• Cleaning Ports
• High Pressure Piping
• Wood Crating

| Item | Description | Ship Date | Qty | UoM | Unit Price | Disc | Line Amt Exl Tax |
|---|---|---|---|---|---|---|---|
| | 35% on Notification of Readiness to Ship - EPRO Reverse Osmosis System | 12/16/24 | 0.35 | Each | 68,597.18122 | 0.00 | 24,009.01 |
| | Freight to Site | 12/16/24 | 1 | Each | 5,293.98496 | 0.00 | 5,293.98 |

|  |  |
|---|---|
| **Subtotal** | **29,302.99** |
| Total Tax | 0.00 |
| **Total $ Incl. Tax** | **29,302.99** |
| **Payment 1/13/2025** | **-$26,135.55** |
| **Remaining Balance** | **$3,167.44** |

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

# INVOICE  PSLTD-004956



| Remit to Address (Checks) | ACH | | Bank Address | Account Information |
|---|---|---|---|---|
| Newterra Ltd | | | M&T Bank N.A. | Account: 9893955857 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Ltd |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1291 California Ave |
| Coraopolis, PA  USA    15108 | | | Phone#: 814-947-5850 | PO Box 1517 |
| | | | | Brockville, ON  K6V5Y6 |
| | | | | |
| | | | | |

# EXHIBIT C



October 29, 2025

**Richard D. Kalson**
Direct Phone    212-453-3729
Direct Fax      646-461-2073
rkalson@cozen.com

**VIA OVERNIGHT MAIL:**

Mr. Bradley Nattrass
Chief Executive Officer
Urban Gro
1751 Panorama Point, Unit G
Lafayette, CO 80026

Christian Monson, Esq.
Executive Vice President and General Counsel
Urban Gro
1751 Panorama Point, Unit G
Lafayette, CO 80026

Mr. Chris Cullens
Executive Vice President of Construction Services
Urban Gro
1751 Panorama Point, Unit G
Lafayette, CO 80026

Mr. Kevin Costenaro
Senior Vice President of Construction Operations
Urban Gro
1751 Panorama Point, Unit G
Lafayette, CO 80026

**Re:    Newterra Corporation, Inc Invoices Nos. 008014, 008765, 008989, and 009299, 2090, and Newterra, Ltd. Invoices Nos. 004956, 005625, and 005635**

Dear Mr. Nattrass, Mr. Monson, Mr. Cullens, and Mr. Costenaro,

Please be informed that this law firm represents Newterra Corporation, Inc ("NCI") and Newterra, Ltd.("NL") in their claims against Urban Gro ("UGRO") for NCI's unpaid balance of $188,130.75 and NL's overdue balance of $4,649.37 that are long overdue.  There can be no doubt that these amounts are due as NCI and NT have fully performed their obligations and UGRO has never denied such debt. Instead, to the contrary, UGRO has chosen to simply try to ignore NCI and NL's requests for payment. The following attached invoices have inexcusably not been paid by UGRO:

1)    NCI's March 14, 2025 Invoice No. 008014 for $50,280.00;

October 29, 2025
Page 2

2)  NCI's May 28, 2025 Invoice No. 008765 for $126,800.00;

3)  NCI's June 17, 2025 Invoice No. 008989 for $9,780.75;

4)  NCI's July 16, 2025 Invoice No. 2173 for $1,250.00;

5)  NL's December 16, 2024 Invoice No. 004956 still has a remaining balance of $3,167.44;

6)  NL's April 7, 2025 Invoice No. 005625 for $1,023.97; and

7)  NL's April 8, 2025 Invoice No. 005635 for $457.96.

Pursuant to the terms of each invoice, payment was owed by UGRO to NCI or NL within 30 days after the date of each invoice.  Therefore, statutory interest at the annual rate of 8.0% is due to NCI for the invoices for the Colorado projects and 8.65% for the invoices on the Florida projects.  Additionally, annual interest at the rate of 18% is due to NL on the Ohio projects.  This interest now cumulatively totals $6,959.96 and will continue to increase each month.  Furthermore, now that NCI and NL has retained me to pursue the collection of the sums that are due to it, NCI and NL is entitled to attorney's fees under Article 12.12 of the governing Supply Agreement.  These fees now total in excess of $2,000.00 and will grow quickly if additional action must be taken by our law firm.

As set forth above, UGRO currently owes NCI and NL a total of $201,740.08 as a result of its payment failures.  However, in a final effort to settle this matter amicably due NCI and NL will accept payment of $192,780.12 if received by NCI and NL from UGRO on or before November  7, 2025.  Otherwise, NCI and NL will proceed to further pursue payment and will be entitled to further interest and all of its attorney's fees.

I look forward to receiving a prompt response from UGRO confirming that payment will be made by UGRO on or before November 7, 2025.

Very truly yours,

COZEN O'CONNOR

BY:    RICHARD D. KALSON

RDK

Encls.

cc:  Newterra (via email)

# Statement - INC

 **newterra**

**Urban-Gro**

AP - Debbie Pena
1751 Panorama Pt Unit G
Lafayette, CO 80026-9452
USA

**Newterra Corporation Inc.**
1555 Coraopolis Heights Road
Ste. 4100
Coraopolis , PA 15108

| | | | |
|---|---|---|---|
| Report Start Date: | 12/31/22 | Email: | receivablesinc@newterra.com |
| Report End Date: | 10/31/25 | Phone: | 1-724-703-3020 |
| Report Print Date: | 10/16/25 | | |
| Customer No: | C20671 | | |

### Please send Any/All issues to Newterra AR at the email above - Immediately

| Posting Date | Document No. | Customer Reference | Due Date | Original Amt | Remaining Amt | Running Total |
|---|---|---|---|---|---|---|
| **Entries USD** | | | | | | |
| | | | | | | 0.00 |
| 03/14/25 | PSINC-008014 | P008306 | 04/13/25 | 50,280.00 | 50,280.00 | 50,280.00 |
| 05/28/25 | PSINC-008765 | P008306 | 06/27/25 | 126,820.00 | 126,820.00 | 177,100.00 |
| 06/17/25 | PSINC-008989 | P008601 | 07/18/25 | 9,780.75 | 9,780.75 | 186,880.75 |
| 07/16/25 | PSINC-009299 | P008623 | 08/16/25 | 1,250.00 | 1,250.00 | 188,130.75 |
| | | | | | **USD** | **188,130.75** |
| | | | | | | |
| **Overdue Entries USD** | | | | | | |
| 03/14/25 | PSINC-008014 | P008306 | 04/13/25 | 50,280.00 | 50,280.00 | |
| 05/28/25 | PSINC-008765 | P008306 | 06/27/25 | 126,820.00 | 126,820.00 | |
| 06/17/25 | PSINC-008989 | P008601 | 07/18/25 | 9,780.75 | 9,780.75 | |
| 07/16/25 | PSINC-009299 | P008623 | 08/16/25 | 1,250.00 | 1,250.00 | |
| | | | | **USD** | **188,130.75** | |

# INVOICE  PSINC-009299


newterra

Bill to:
Urban-Gro
AP - Debbie Pena
1751 Panorama Pt Unit G
Lafayette, CO 80026-9452
USA

Ship to:
Monticello
Gordon Oakley
1948 W Capps Hwy
Monticello, FL 32344-7106
USA

Remit to:
See Remit to Information at Bottom
EIN #:        85-3341066
Email:       receivablesinc@newterra.com
Phone:      1-724-703-3020 Ext 108
Fax:         1-724-546-5155

| | |
|---|---|
| Invoice Date: | July 16, 2025 |
| Cust Purch Order: | P008623 |
| Sales Order No: | SOINC-005064 |
| Shipping Agent: | FEDEX |
| Tracking No: | 462746922514 |
| Payment Terms: | Net 30 days |
| Due Date: | August 16, 2025 |
| Your Reference: | |

Salesperson    Sahyra Nunez

**Please send Any/All issue to Newterra AR Immediately at Email above**

Each line item will need to ship separately

| Item | Description | Shipment Date | Qty | UoM | Price | Discount | Line Amount Excl. Tax |
|---|---|---|---|---|---|---|---|
| 62627 | Bag, Size #2, Oil Absorbing, OA25-P2RPO | 07/14/25 | 25 | Each | 50.00 | 0.00 | 1,250.00 |
| | | | | Subtotal | | | 1,250.00 |
| | | | | Total Tax | | | 0.00 |
| | | | | Total $ Incl. Tax | | | 1,250.00 |

USD

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

| Remit to Address (Checks) | ACH | | Bank Address | Account Information |
|---|---|---|---|---|
| Newterra Corporation, Inc. | | | M&T Bank N.A. | Account: 9893955840 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Corporation, Inc. |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1555 Coraopolis Heights Road |
| Coraopolis, PA  USA   15108 | Currency: $USA | | Phone#: 814-947-5850 | Suite 4100 |
| | | | | Coraopolis, PA  USA   15108 |
| | | | | |
| | | | | |

# INVOICE  PSINC-008765

**◆ newterra**

**Bill to:**
Urban-Gro
AP - Debbie Pena
1751 Panorama Pt Unit G
Lafayette, CO 80026-9452
USA

**Ship to:**
Monticello
Gordon Oakley
1948 W Capps Hwy
Monticello, FL 32344-7106
USA

**Remit to:**
See Remit to Information at Bottom
EIN #:        85-3341066
Email:        receivablesinc@newterra.com
Phone:        1-724-703-3020 Ext 108
Fax:          1-724-546-5155

| | |
|---|---|
| Invoice Date: | May 28, 2025 |
| Cust Purch Order: | P008306 |
| Sales Order No: | |
| Shipping Agent: | |
| Tracking No: | |
| Payment Terms: | Net 30 days |
| Due Date: | June 27, 2025 |
| Your Reference: | |

Salesperson   David Alvarado
Project No.   2404501

**Please send Any/All issue to Newterra AR Immediately at Email above**

| Item | Description | Ship Date | Qty | UoM | Unit Price | Disc | Line Amt Exl Tax |
|---|---|---|---|---|---|---|---|
| | Condensate Treatment and Recovery RO - 35% on Notification of Readiness to Ship | 05/22/25 | 0.35 | | 335,200.00 | 0.00 | 117,320.00 |
| | Freight for Condensate & RO Skids | 05/22/25 | 1 | | 9,500.00 | 0.00 | 9,500.00 |
| | | | | | **Subtotal** | | **126,820.00** |
| | | | | | **Total Tax** | | 0.00 |
| | | | | | **Total $ Incl. Tax** | | **126,820.00** |

USD

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

| Remit to Address (Checks) | ACH | | Bank Address | Account Information |
|---|---|---|---|---|
| Newterra Corporation, Inc. | | | M&T Bank N.A. | Account: 9893955840 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Corporation, Inc. |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1555 Coraopolis Heights Road |
| Coraopolis, PA  USA   15108 | Currency: $USA | | Phone#: 814-947-5850 | Suite 4100 |
| | | | | Coraopolis, PA  USA   15108 |

# INVOICE  PSINC-008014

**◈ newterra**

Bill to:
Urban-Gro
AP - Debbie Pena
1751 Panorama Pt Unit G
Lafayette, CO 80026-9452
USA

Ship to:
Urban-Gro
AP - Debbie Pena
1751 Panorama Pt Unit G
Lafayette, CO 80026-9452
USA

Remit to:
See Remit to Information at Bottom
EIN #:        85-3341066
Email:        receivablesinc@newterra.com
Phone:        1-724-703-3020 Ext 108
Fax:          1-724-546-5155

| | |
|---|---|
| Invoice Date: | March 14, 2025 |
| Cust Purch Order: | P008306 |
| Sales Order No: | |
| Shipping Agent: | |
| Tracking No: | |
| Payment Terms: | Net 30 days |
| Due Date: | April 13, 2025 |
| Your Reference: | |

Salesperson    David Alvarado
Project No.    2404501

**Please send Any/All issue to Newterra AR Immediately at Email above**

| Item | Description | Ship Date | Qty | UoM | Unit Price | Disc | Line Amt Exl Tax |
|---|---|---|---|---|---|---|---|
| | Condensate Treatment and Recovery RO - 15% on Commencement of Assembly | | 0.15 | | 335,200.00 | 0.00 | 50,280.00 |
| | | | | | **Subtotal** | | **50,280.00** |
| | | | | | Total Tax | | 0.00 |
| | | | | | **Total $ Incl. Tax** | | **50,280.00** |
| | | | | | | | **USD** |

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

| Remit to Address (Checks) | ACH | | Bank Address | Account Information |
|---|---|---|---|---|
| Newterra Corporation, Inc. | | | M&T Bank N.A. | Account: 9893955840 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Corporation, Inc. |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1555 Coraopolis Heights Road |
| Coraopolis, PA  USA   15108 | Currency: $USA | | Phone#: 814-947-5850 | Suite 4100 |
| | | | | Coraopolis, PA  USA   15108 |

# INVOICE  PSINC-008989

**newterra**

| Bill to: | Ship to: | Remit to: |
|---|---|---|
| Urban-Gro | Trulieve-Jeffco | See Remit to Information at Bottom |
| AP - Debbie Pena | Gordon Oakley | EIN #: 85-3341066 |
| 1751 Panorama Pt Unit G | 1948 W Capps Hwy Bldg 1 | Email: receivablesinc@newterra.com |
| Lafayette, CO 80026-9452 | Building #1 | Phone: 1-724-703-3020 Ext 108 |
| USA | Monticello, FL 32344-7106 | Fax: 1-724-546-5155 |

| Invoice Date: | June 18, 2025 | | |
|---|---|---|---|
| Cust Purch Order: | P008601 | | |
| Sales Order No: | SOINC-004906 | | |
| Shipping Agent: | | Salesperson | Sahyra Nunez |
| Tracking No: | | | |
| Payment Terms: | Net 30 days | | |
| Due Date: | July 18, 2025 | | |
| Your Reference: | | | |

**Please send Any/All issue to Newterra AR Immediately at Email above**

Each line item will need to ship separately

| Item | Description | Shipment Date | Qty | UoM | Price | Discount | Line Amount Excl. Tax |
|---|---|---|---|---|---|---|---|
| 60615 | Filter, Max-A High Flow, Bothers Filtration, BHFA-PP-40-N-0500-E-S-H<br>Media: Polypropylene, Max Flowrate: 75m/hr | 06/09/25 | 12 | Each | 167.75 | 0.00 | 2,013.00 |
| 62627 | Bag, Size #2, Oil Absorbing, OA25-P2RPO | 06/09/25 | 36 | Each | 50.00 | 0.00 | 1,800.00 |
| PW-AV-V4000-500D | Antiscalant, Vitec 4000, 500lb drum | 06/09/25 | 1 | Each | 3,272.75 | 0.00 | 3,272.75 |
| 99FREIGHTOUT | Freight Prepay and Add  - High Flow Filters | 06/09/25 | 1 | Each | 845.00 | 0.00 | 845.00 |
| 99FREIGHTOUT | Freight Prepay and Add - Bag Filters | 06/09/25 | 1 | Each | 100.00 | 0.00 | 100.00 |
| 99FREIGHTOUT | Freight Prepay and Add - Antiscalant | 06/09/25 | 1 | Each | 1,750.00 | 0.00 | 1,750.00 |

| | |
|---|---|
| Subtotal | 9,780.75 |
| Total Tax | 0.00 |
| Total $ Incl. Tax | 9,780.75 |
| | USD |

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

| Remit to Address (Checks) | ACH | | Bank Address | Account Information |
|---|---|---|---|---|
| Newterra Corporation, Inc. | | | M&T Bank N.A. | Account: 9893955840 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Corporation, Inc. |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1555 Coraopolis Heights Road |
| Coraopolis, PA  USA   15108 | Currency: $USA | | Phone#: 814-947-5850 | Suite 4100 |
| | | | | Coraopolis, PA  USA   15108 |

# Statement -LTD

**◊ newterra**

## Urban-Gro

Accounts Payable
1751 Panorama Pt Unit G
Unit G
Lafayette, CO 80026-9452

**Newterra Ltd**
1291 California Ave
P.O. Box 1517
Brockville, ON K6V 5Y6

| | | | |
|---|---|---|---|
| Report Start Date: | 12/31/22 | Email: | receivablesltd@newterra.com |
| Report End Date: | 10/31/25 | Phone: | 1-800-420-4056 |
| Report Print Date: | 10/16/25 | | |
| Customer No: | CL20338 | | |

### Please send Any/All issues to Newterra AR at the email above - Immediately

| Posting Date | Document No. | Customer Reference | Due Date | Original Amt | Remaining Amt | Running Total |
|---|---|---|---|---|---|---|
| **Entries USD** | | | | | | |
| | | | | | | 0.00 |
| 12/16/24 | PSLTD-004956 | P008284 | 01/15/25 | 29,302.99 | 3,167.44 ✓ | 3,167.44 |
| 04/07/25 | PSLTD-005625 | VERBAL BEN G P008535 | 05/07/25 | 1,023.97 | 1,023.97 ✓ | 4,191.41 |
| 04/08/25 | PSLTD-005635 | P008535 | 05/07/25 | 457.96 | 457.96 ✓ | 4,649.37 |
| | | | | | **USD** | **4,649.37** |

# INVOICE  PSLTD-005625

**newterra**

Bill to:
Urban-Gro
Accounts Payable
1751 Panorama Pt Unit G
Unit G
Lafayette, CO 80026-9452
USA

Ship to:
New Integration, LLC
Gordon Oakley 850.459.7264
1265 County Road 1A
Ironton, OH 45638-8698
USA

Remit to:
See Remit to Information at Bottom

| | | | |
|---|---|---|---|
| Invoice Date: | April 8, 2025 | Email: | receivablesltd@newterra.com |
| Cust Purch Order: | VERBAL BEN G P008535 | Phone: | 1-800-420-4056 |
| Sales Order No: | SOLTD-007197 | Fax: | 1-289-203-1319 |
| Shipping Agent: | | Salesperson | Larry Hayward |
| Tracking No: | 15075526234 | | |
| Payment Terms: | Net 30 days | Bus GST# | 133432591 |
| Due Date: | May 7, 2025 | | |
| Your Reference: | | | |

**Please send Any/All issue to Newterra AR Immediately at Email above**

RUSH
Please ship for delivery no later than Wednesday 4/9/2025

| Item | Description | Shipment Date | Qty | UoM | Price | Discount | Line Amount Excl. Tax |
|---|---|---|---|---|---|---|---|
| 46383 | NT 700PNSF    ANTISCALANT, BROAD SPECTRUM 5 GALLON PAIL NSF APPROVED | 04/10/25 | 1 | Each | 388.80 | 0.00 | 388.80 |
| 60615 | Filter, Max-A High Flow, Brothers Filtration, BHFA-PP-40 -N-0500-E-S-H Media: Polypropylene, Max Flowrate:  75m/hr | 04/10/25 | 2 | Each | 164.00 | 0.00 | 328.00 |
| 99FREIGHTOUT | Outbound Freight/Tariff (Sales) | 04/10/25 | 1 | Each | 307.17 | 0.00 | 307.17 |

| | |
|---|---|
| **Subtotal** | **1,023.97** |
| Total Tax | 0.00 |
| **Total $ Incl. Tax** | **1,023.97** |

USD

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

| Remit to Address (Checks) | ACH | | Bank Address | Account Information |
|---|---|---|---|---|
| Newterra Ltd | | | M&T Bank N.A. | Account: 9893955857 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Ltd |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1291 California Ave |
| Coraopolis, PA  USA    15108 | | | Phone#: 814-947-5850 | PO Box 1517 |
| | | | | Brockville, ON  K6V5Y6 |

# INVOICE  PSLTD-005635



| Bill to: | Ship to: | Remit to: |
|---|---|---|
| Urban-Gro<br>Accounts Payable<br>1751 Panorama Pt Unit G<br>Unit G<br>Lafayette, CO 80026-9452<br>USA | New Integration, LLC<br>Gordon Oakley 850.459.7264<br>1265 County Road 1A<br>Ironton, OH 45638-8698<br>USA | See Remit to Information at Bottom |

| | | | |
|---|---|---|---|
| Invoice Date: | April 9, 2025 | Email: | receivablesltd@newterra.com |
| Cust Purch Order: | P008535 | Phone: | 1-800-420-4056 |
| Sales Order No: | SOLTD-007198 | Fax: | 1-289-203-1319 |
| Shipping Agent: | | Salesperson | Larry Hayward |
| Tracking No: | | | |
| Payment Terms: | Net 30 days | Bus GST# | 133432591 |
| Due Date: | May 7, 2025 | | |
| Your Reference: | | | |

**Please send Any/All issue to Newterra AR Immediately at Email above**

| Item | Description | Shipment Date | Qty | UoM | Price | Discount | Line Amount Excl. Tax |
|---|---|---|---|---|---|---|---|
| 46383 | NT 700PNSF    ANTISCALANT, BROAD SPECTRUM 5 GALLON PAIL NSF APPROVED | 04/17/25 | 1 | Each | 388.80 | 0.00 | 388.80 |
| 99FREIGHTOUT | Outbound Freight/Tariff (Sales) | 04/17/25 | 1 | Each | 69.16 | 0.00 | 69.16 |
| | | | | **Subtotal** | | | **457.96** |
| | | | | **Total Tax** | | | 0.00 |
| | | | | **Total $ Incl. Tax** | | | **457.96** |

USD

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

| Remit to Address (Checks) | ACH | | Bank Address | Account Information |
|---|---|---|---|---|
| Newterra Ltd | | | M&T Bank N.A. | Account: 9893955857 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Ltd |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1291 California Ave |
| Coraopolis, PA  USA   15108 | | | Phone#: 814-947-5850 | PO Box 1517 |
| | | | | Brockville, ON  K6V5Y6 |

**Page 1 / 1**

# INVOICE  PSLTD-004956

**newterra**

Bill to:
Urban-Gro
Accounts Payable
1751 Panorama Pt Unit G
Unit G
Lafayette, CO 80026-9452
USA

Ship to:
New Integration, LLC
Gordon Oakley 850.459.7264
1265 County Road 1A
Ironton, OH 45638-8698
USA

Remit to:
See Remit to Information at Bottom

| | | | |
|---|---|---|---|
| Invoice Date: | December 16, 2024 | Email: | receivablesltd@newterra.com |
| Cust Purch Order: | P008284 | Phone: | 1-800-420-4056 |
| Sales Order No: | | Fax: | 1-289-203-1319 |
| Shipping Agent: | | Salesperson | Scott Kirk |
| Tracking No: | | Project No. | 2404242 |
| Payment Terms: | Net 30 days | Bus GST# | 133432591 |
| Due Date: | January 15, 2025 | | |
| Your Reference: | | | |

**Please send Any/All issue to Newterra AR Immediately at Email above**

EPRO™ LMF-20 Series
31,00 gallons per day 21 gpm Standard Features
• Flow Meters: Digital Concentrate & Permeate and Analog Recycle
• Grundfos CR-Series 316 SS Pump w/TEFC Motor 10HP
• 4 Membranes: 8inx40in, TFC Brackish Water
• 2 FRP Side-ported, 300 psi Pressure Vessels
• Low Pressure Switch
• Voltage: 460V/60Hz/3 Phase
• Prefilter Housing: 316SS w/ 5 micron cartridges
• Pressure Gauges: 2.5in Dia., 316SS, Pre- & Post-Filter, First Array Feed, Concentrate, Permeate & Interstage
• Variable Frequency Drive (VFD)
• Automatic Inlet Feedwater Valve
• 316SS High Pressure Valves (Concentrate, Recycle)
• Series 200 RO Controller (microprocessor controlled)
• 2in Inlet Size
• 2in Permeate Size
• 20 psi Inlet Pressure Required
• Automatic Fast Flush
• TDS Monitor
• Concentrate Recycle Loop
• Sample Valves
• Cleaning Ports
• High Pressure Piping
• Wood Crating

| Item | Description | Ship Date | Qty | UoM | Unit Price | Disc | Line Amt Exl Tax |
|---|---|---|---|---|---|---|---|
| | 35% on Notification of Readiness to Ship - EPRO Reverse Osmosis System | 12/16/24 | 0.35 | Each | 68,597.18122 | 0.00 | 24,009.01 |
| | Freight to Site | 12/16/24 | 1 | Each | 5,293.98496 | 0.00 | 5,293.98 |

| | |
|---|---|
| Subtotal | 29,302.99 |
| Total Tax | 0.00 |
| **Total $ Incl. Tax** | **29,302.99** |
| **Payment 1/13/2025** | **-$26,135.55** |
| **Remaining Balance** | **$3,167.44** |

**Please note: There is a 3% administrative charge applied to all payments processed via credit card**

# INVOICE  PSLTD-004956



| Remit to Address (Checks) | ACH | | Bank Address | Account Information |
|---|---|---|---|---|
| Newterra Ltd | | | M&T Bank N.A. | Account: 9893955857 |
| 1555 Coraopolis Heights Road | Swift: | MANTUS33 | 301 West Plank Rd. | Newterra Ltd |
| Suite 4100 | Routing #: | 022000046 | Altoona, PA 16602 | 1291 California Ave |
| Coraopolis, PA  USA    15108 | | | Phone#: 814-947-5850 | PO Box 1517 |
| | | | | Brockville, ON  K6V5Y6 |
| | | | | |
| | | | | |
| | | | | |